No. 85-515

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

TEAMSTERS LOCAL NO. 45, affiliated
with International Brotherhood of
Teamsters, et al.,

Petitioners and Appellants,

-vs-

STATE OF MONTANA, ex rel., BOARD OF
PERSONNEL APPEALS AND STUART McCARVEL,

Respondents and Respondents.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Gordon Bennett, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hilley & Loring; Emilie Loring, Great Falls, Montana

For Respondent:

Daniel J. Stevenson, Dept. of Labor, Helena, Montana
Poore, Roth & Robinson; Douglas Buxbaum, Butte,
Montana

Submitted on Briefs: May 30, 1986

Decided: August 28, 1986

Filed: AUG 2 8 1986

_____
*Ethel M. Harrison*
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The Union appeals from the opinion and order and judgment entered by the District Court of the First Judicial District, Lewis and Clark County, which affirmed the decision of the Board of Personnel Appeals. We affirm.

Stuart McCarvel was a bookmobile driver for Great Falls from 1976 to 1978. He received his first paycheck on March 5, 1976. Although he had worked a 40 hour work week, he was paid at the rate provided in the collective bargaining agreement for bookmobile drivers for only 20 hours. He was paid at the clerical rate which was about $2.00 less per hour for 20 hours. McCarvel went to the Union Hall the same day and sought to file a grievance. Under the terms of the collective bargaining agreement, "a grievance involving wages must be raised within ten (10) calendar days following the event giving rise to such grievance or be forever waived." The Union refused to file a grievance. McCarvel attempted to file grievances again in May, 1976, December, 1976, and February or March, 1977. He was refused at all times. McCarvel tried numerous times to reach the Union's business agent who would not return McCarvel's call. In the course of these proceedings McCarvel learned that ten years earlier the Union and the library worked out an oral side agreement whereby drivers would be paid for 20 hours at the Union driver's rate and 20 hours at the library's nonunion clerical rate.

In February, 1977, McCarvel met with the Union business agent who stated that the Union was preparing for negotiations with the city and that filing a grievance would

- 2 -

"rock the boat." The business agent stated they would try to straighten the matter out during negotiations. Negotiations were unsuccessful and the Union struck the city from July 1 to July 26, 1977. Near the end of the strike the business agent told McCarvel that negotiations would not settle the matter, so the grievance procedure should be used. McCarvel filed an unfair labor practice charge against the Union on August 8, 1977. On the same day, the Union filed McCarvel's grievance. The Union processed the grievance through the grievance committee which was composed of three city members and three Union members. It deadlocked. The Union could then have taken economic or legal action. It did neither and the grievance was waived.

McCarvel pursued his unfair labor practice claim and on November 30, 1978 the hearing examiner entered findings of fact, conclusions of law and a recommended order. The parties had agreed to bifurcate the liability and remedy issues, so the hearing examiner's initial order was limited to the liability issue. She found the Union had failed to fairly represent McCarvel by failing to accept and process his grievance.

On February 22, 1979, the Board of Personnel Appeals affirmed the hearing examiner and ordered an additional hearing to determine remedies. Prior to this hearing, however, the Union filed a motion to dismiss the charges before the Board, claiming the Board had no jurisdiction to decide the case. The Board refused to dismiss the charge and the Union appealed that ruling to the District Court. The District Court held the Board lacked jurisdiction and dismissed the case. The Board appealed to this Court and we reversed. Teamsters Local 45 v. State ex rel. Board of

Personnel Appeals (1981), 195 Mont. 272, 635 P.2d 1310. The District Court remanded the matter to the Board for a hearing on remedies. After that hearing, the examiner entered proposed findings and conclusions and recommended McCarvel be awarded $8,353.17. The Board issued its decision December 16, 1983, adopting the examiner's findings and ordering the Union to pay lesser damages of $7,540.00 in accordance with the apportionment scheme approved in Bowen v. U.S. Postal Service (1983), 459 U.S. 212, 103 S.Ct. 558, 74 L.Ed.2d 402. The Union filed for judicial review on January 16, 1984. Because the prior district court action on this matter involved consideration of the issue of jurisdiction only, the District Court reviewed the Board's unfair labor practice decision as well as the decision on remedies. The District Court affirmed the decision of the Board in its entirety. The Union appeals.

The Union raises five issues for review. First, whether the District Court erred in approving damages for the period of McCarvel's employment prior to February 8, 1977. Second, whether the District Court erred in affirming damages after August 8, 1977. Third, whether the District Court erred in affirming the Board's notice requirement. Fourth, whether the District Court erred in affirming the Board's finding the Local failed to fairly represent McCarvel in handling his claim for overtime pay. Last, whether the District Court erred in affirming the Board's conclusion the "Union's conduct was so unreasonable and arbitrary as to constitute a breach of the duty of fair representation."

We begin with the standard of review governing this appeal. The Board's order is subject to review by a district court pursuant to § 39-31-409, MCA. The order of a district

court is subject to review by this Court pursuant to the same section. The standard of review at both levels is set by § 39-31-105, MCA, which states that the Montana Administrative Procedure Act (MAPA) applies. Section 2-4-704, MCA, sets forth the MAPA standards of review. Specifically, factual findings will be upheld if they are not clearly erroneous, that is if they are supported by substantial evidence on the whole record. In reviewing legal questions, the standard of review is abuse of discretion. City of Billings v. Billings Firefighters (1982), 200 Mont. 421, 651 P.2d 627.

The first issue raised by appellants is whether the District Court erred in approving damages for the period of McCarvel's employment prior to six months before the claim was filed. Section 39-31-404, MCA, states:

> No notice of hearing shall be issued based upon any unfair labor practice more than 6 months before the filing of the charge with the board unless the person aggrieved thereby was prevented from filing the charge by reason of service in the armed forces, in which event the 6-month period shall be computed from the day of his discharge.

This statute does not address damages; it is a statute of limitations for charges based on unfair labor practices. In this case we agree with the District Court that the unfair labor practice was a continuing course of conduct which began on March 5, 1976, when McCarvel received his first paycheck and the Union refused to file a grievance, and continued on until well past the time the unfair labor practice charge was filed in August 1977. Thus the charge was filed within the six month statute of limitations. Once the unfair labor practice is established, the issue of damage arises. The District Court affirmed the award of damages beginning on February 17, 1976 and running until June 30, 1978 which constitutes the entire time McCarvel worked for the city.

- 5 -

The Union argues the back pay should have been limited to six months prior to August 8, 1977 (the date the charge was filed.) The District Court noted the National Labor Relations Board (NLRB) has not taken a consistent position on back pay. At times, it limited back pay to six months prior to the date the charge is filed. Nelson-Hershfield Electronics (1971), 188 NLRB 26, 77 LRRM 1013. In other cases, the court awarded back pay for the entire time the grievant suffered a wage loss due to the Union's failure to process a grievance. IBEW, Local 2088 (Federal Electric Corp.) (1975), 218 NLRB 396, 89 LRRM 1590; Abilene Sheet Metal, Inc. v. NLRB (5th Cir. 1980), 619 F.2d 332. In allowing damages prior to six months before the charge was filed, the District Court held it would be manifestly unfair to the grievant to limit the damages and would reward the Union for its procrastination. We agree that this is a proper case to allow damages beyond the six month limit.

The second issue raised by appellant is whether the District Court erred in affirming damages after the wage grievance was filed on August 8, 1977. The Union argues it processed McCarvel's grievance properly once it was filed, thus it should not be liable for the damages incurred after the grievance was filed.

The District Court affirmed the hearing examiner's findings that the Union by its inaction cut off the only avenue open to them to get a determination of the merits of the grievance. The hearing examiner relied on Clerks and Checkers Local 1593, International Longshoreman Association (1978), 234 NLRB 511, 98 LRRM 1328, and IBEW, Local 2088 (1975), 218 NLRB 396, 89 LRRM 1590, which held that in a duty of fair representation case where the union failed to process

a wage grievance, the union's liability will cease on the day of final disposition of the grievance. The District Court affirmed the Board's award of damages from the time McCarvel began his employment until he left it. We find no abuse of discretion on the part of the District Court.

The third issue raised by the appellant is whether the District Court erred in affirming the Board's notice requirement. The Board ordered the Union to mail this notice to "all employees in the bargaining unit of the City of Great Falls:"

> After a hearing at which both sides had an opportunity to present evidence and state their positions, the Board of Personnel Appeals found that we have violated the Collective Bargaining Act for Public Employees and has ordered us to mail this notice to each member of the bargaining unit.
>
> WE WILL NOT fail or refuse to fairly represent any employees represented by us or arbitrarily fail or refuse to file and process any employee's grievance on a fair basis or refuse to inform employees of the status of their grievance.
>
> WE WILL make Stuart Thomas McCarvel whole for the loss of pay he suffered as a result of our unlawful refusal to consider or process his grievance.
>
> INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS,
>
> WAREHOUSEMEN AND HELPERS OF AMERICA, LOCAL 45

The Union argues the order is in excess of the Board's jurisdiction. Section 39-31-406, MCA, gives the Board discretion to "take such affirmative action . . . as will effectuate the policies of this chapter." Posting of notices is more common but the NLRB has required the mailing of notices to all employees. NLRB v. H. W. Elson Bottling Co. (1967), 379 F.2d 223. The District Court held the egregious behavior of the Union in refusing to file the grievance for 17 months justified the Board's remedial order. The District Court went on to state:

> The bargaining unit involved here is a broad, multicraft unit represented by the Public Employees Craft Council. The Union's membership constitutes only a portion of the bargaining unit. Because this unfair labor practice involves only the Teamsters, it is difficult to see how mailing notice of the violation to all members of the bargaining unit will effectuate the policies of the statute. But the choice of the Board will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than whose [sic] which can fairly be said to effectuate the policies of the statute. (NLRB v. Electrical Workers, Local 3, ___ F.2d ___, 115 LRRM 3436 (2nd Cir. 1984). No such showing has been made in this case.

The District Court did not abuse its discretion in this finding.

The fourth issue raised by appellant is whether the District Court erred in affirming the Board's finding a failure to fairly represent McCarvel in handling his claim for overtime pay. The Union contends McCarvel failed to provide the business agent with sufficient records of the overtime he worked. However, the record shows McCarvel attempted to supply his time sheet to the Union but the business agent brushed the offer aside saying he believed him. The Union also argues that McCarvel got compensatory time rather than overtime in accordance with library policy. However, the rights of the parties were set forth in the collective bargaining agreement which provided for overtime pay. The library could not unilaterally modify that agreement. The District Court was correct in affirming the Board's order.

The fifth issue raised by appellant is whether the District Court was correct in affirming the Board's conclusion that the Union conduct was so unreasonable and arbitrary as to constitute a breach of the duty of fair representation. A union's duty of fair representation is a

judicially created doctrine first recognized in the context of the Railway Labor Act in Steele v. Louisville & Nashville Railroad Co. (1944), 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. Steele required the Union to represent its individual members "without hostile discrimination, fairly, impartially and in good faith." Id. at 204, 65 S.Ct. at 232, 89 L.Ed. at 184. The Steele principle was later extended to bargaining representations under the National Labor Relations Act (NLRA). Syres v. Oil Workers International Union, Local 23 (1955), 350 U.S. 892, 76 S.Ct. 152, 100 L.Ed. 785. The NLRB first recognized a breach of the duty of fair representation as an unfair labor practice in Miranda Fuel Co. (1962), 140 NLRB 181, 51 LRRM 1584, reasoning the privilege to act as an exclusive bargaining representative granted in § 9 of the NLRA necessarily gives rise to a corresponding § 7 right in union constituents to fair representation by the exclusive representative. Although the duty of fair representation arose in the context of racial discrimination, the doctrine has been expanded to include arbitrary conduct by a union toward bargaining unit members. In Vaca v. Sipes (1967), 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, the United States Supreme Court stated the controlling test for breach of the union duty of fair representation: "A breach of the statutory duty of fair representation occurs only when a union's conduct . . . is arbitrary, discriminatory, or in bad faith." Id. at 190, 87 S.Ct. at 916, 17 L.Ed.2d at 857. Thus it is settled under federal labor law and therefore under Montana labor law that a union may not arbitrarily ignore a meritorious grievance or process it in a perfunctory manner. Id. at 191, 87 S.Ct. at 917, 17 L.Ed.2d at 858.

In her examination of the Union's conduct in this case, the hearing examiner found the only excuses offered McCarvel for the Union's refusal to accept the grievance were: (1) the existence of an oral agreement; (2) the problem would be taken care of at the bargaining table; and, (3) pressing the grievance would upset contract negotiations with the city. These excuses were found "clearly specious" because (1) the oral agreement did not cover overtime and could not be used as an excuse to refuse the grievance, since the right of an employee to the minimum wage provided in the written agreement was an individual right which could not be taken away by an oral agreement between the employer and a union official (Eversole v. La Combe (1951), 125 Mont. 87, 231 P.2d 945); (2) since the contract provided for overtime, failure to award overtime was a contract violation and required no further negotiations; and, (3) negotiations were only part of the Union's duty to its members. Having so found, the hearing examiner concluded the Union's action was arbitrary in that the Union advanced no substantial reason for its failure to accept the grievance, to make a good faith investigation, and to submit the grievance for an organized screening process. Contrary to the Union's assertion, the hearing examiner did not find mere negligence in the Union's handling of the grievance. Recognizing that the business agent's inaction in returning telephone calls could be considered passive and therefore negligent conduct, the hearing examiner emphasized, "However, this inaction combined with his subsequent statements to McCarvel indicate an active, intentional avoidance of accepting the grievance." Even unintentional acts or omission by union officials may be considered arbitrary if

they reflect reckless disregard for the rights of individual employees, if they severely prejudice the injured employee and if the policies underlying the duty of fair representation would not be served in shielding the Union from liability in the particular case. Robesky v. Qantas Empire Airlines Limited (9th Cir. 1978), 573 F.2d 1082, 1088-90. The more meritorious the grievance the more substantial the reason must be to justify abandoning it. Gregg v. Chauffeurs, Teamsters and Helpers Local 150 (9th Cir. 1983), 699 F.2d 1015, 1016. We can think of few issues more meritorious and important to an employee than the issue of pay. The District Court's conclusion that the Union's conduct was so unreasonable and arbitrary as to constitute a breach of the duty of fair representation is firmly supported by the law and the facts.

We affirm the judgment of the District Court.

_____
John L. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 11 -