DA 10-0225

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 258

AMY R. BLEHM,

Plaintiff and Appellant,

v.

ST. JOHN'S LUTHERAN HOSPITAL, INC.,

Defendant and Appellee.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DV 09-123
Honorable Michael C. Prezeau, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Reid J. Perkins; Worden Thane P.C., Missoula, Montana

For Appellee:

Scott D. Hagel; Daniel D. Johns; Crowley Fleck PLLP,
Kalispell, Montana

Submitted on Briefs:  November 4, 2010

Decided:  December 14, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Amy Blehm appeals from the District Court's April 7, 2010 order granting summary judgment to St. John's Lutheran Hospital on her claim for wrongful discharge from employment. We affirm.

¶2    Blehm presents issues for review that we restate as follows:

¶3    Issue 1. Whether the District Court erred in determining that she was a probationary employee under § 39-2-904(2), MCA.

¶4    Issue 2: Whether the District Court erred in refusing to imply a common-law exception to § 39-2-904(2), MCA, based upon Blehm's contention that she was terminated for refusing to violate public policy or for reporting a violation of public policy.

## BACKGROUND

¶5    In August, 2008 Blehm was employed as a human resources manager at the Sidney Health Center in Sidney, Montana. She interviewed with St. John's for a similar position at its hospital in Libby, Montana. St. John's offered her the position of Human Resources Manager on August 12. Blehm accepted the offer and a proposed start date of September 29. On August 26 Blehm withdrew her acceptance of the St. John's job, which offered $85,500 per year plus benefits, in favor of a higher paying job in Butte.

¶6    Blehm then changed her mind again and on September 1, 2008 requested that St. John's re-offer the job to her. St. John's agreed to do so and offered a starting date of September 29. Blehm accepted the job and requested a later starting date of October 6,

2

2008. Blehm moved from Sidney, Montana to Libby Montana, and St. John's reimbursed her $6,000 for moving expenses. Upon arrival at St. John's, Blehm executed several employment-related documents each stating that her date of hire was October 6, 2008. On that first day at work Blehm and other St. John's employees flew to Nashville, Tennessee, to attend a work-related conference.

¶7 When Blehm began work as Human Resources Manager at St. John's the Employee Handbook specified a probationary period for employees:

> Full-time and part-time employees are considered to be in an orientation period for the first ninety (90) calendar days. Department managers will have a 180 day orientation/probationary period.

One of Blehm's first official acts as the Human Resources Manager was to amend the provision on probationary employment to provide:

> The first six months of employment are considered a probationary period; however, probationary periods may be extended. At the end of this time there is no guarantee of future employment. Demonstrated work proficiency, dependability, expected behaviors, ability, initiative, attitude and cooperation of the employee will be some of the factors determining continued employment at St. John's Lutheran Hospital.

Blehm sent this amended language to all St. John's employees who had been hired in the previous six months, with directions that they should include the new provision in their Employee Handbooks.

¶8 The District Court found that "[t]hings did not go smoothly with Blehm's employment with SJLH." St. John's terminated Blehm's employment on April 2, 2009. She filed suit on July 17, 2009 under the Wrongful Discharge From Employment Act, §§

3

39-2-901, et seq., MCA. The District Court entered summary judgment for St. John's, dismissed the complaint, and this appeal followed.

**STANDARD OF REVIEW**

¶9 We review a district court's ruling on summary judgment de novo, using the same standards as the district court. *Revelation Industries v. St. Paul Fire & Marine Ins. Co.*, 2009 MT 123, ¶ 13, 350 Mont. 184, 206 P.3d 919. We review a district court's resolution of issues of law such as statutory interpretation to determine whether they are correct. *LeFeber v. Johnson*, 2009 MT 188, ¶ 19, 351 Mont. 75, 209 P.3d 254.

**DISCUSSION**

¶10 Issue 1. Whether the District Court erred in determining that Blehm was a probationary employee who could be terminated for any reason under § 39-2-904(2), MCA.

¶11 Montana adopted the Wrongful Discharge from Employment Act in 1987. One of the purposes of the Act is to provide protection from wrongful discharge to employees after the end of their probationary period. Section 39-2-904, MCA. However, "[d]uring a probationary period of employment, the employment may be terminated at the will of either the employer or the employee on notice to the other for any reason or for no reason." An employer may establish the relevant probationary period, but if not "there is a probationary period of 6 months from the date of hire." Section 39-2-904(2)(b), MCA.

¶12 In this case the District Court found that there were three possible sources for a probationary period for Blehm's employment with St. John's: the 180-day orientation/probationary period provided for department managers in the original

Employee Handbook; the first six months of employment provided for all employees in the Employee Handbook revision adopted by Blehm; or the statutory default period of six months from the date of hire provided in § 39-2-904(2)(b), MCA.

¶13 Much of the argument in the briefs on appeal is devoted to competing theories for determining Blehm's "date of hire" under the default probationary period provided in § 39-2-904(2)(b), MCA. However, the default "date of hire" provision in the statute does not apply here because the employer established a specific probationary period of either the "first" 180 days (under the Employee Handbook in effect when Blehm started working) or the "first six months of employment" (under the amendment adopted by Blehm as Human Resources Manager for St. John's). Under either version of the Employee Handbook, Blehm's probationary period began the day she began working for St. John's, on October 6, 2008.[1]

¶14 Blehm argues that she actually began employment with St. John's prior to October 6, 2008. She contends that she began employment with St. John's either in early August, 2008, when she first accepted the hospital's offer of employment, or in September, 2008, when she accepted a second offer after having withdraw her acceptance of the first. She contends that under either of these dates her 6-month probationary period expired before she was terminated.

---

[1] Blehm also argues that she was subject to the 90-day probationary period applicable to "full time and part time employees" under the original St. John's Employee Handbook. It is clear, however, that Blehm, as Human Resources Manager for the Hospital, was a "department manager" subject to the 180-day probationary period.

¶15 The District Court properly rejected these contentions. The existence of a probationary period for new employees is an integral part of the Wrongful Discharge from Employment Act. Section 39-2-904, MCA, not only allows employers to define a probationary period, but also provides a default probationary period if the employer fails to do so. The purpose of probationary employment at St. John's, in the language Blehm drafted for the revised Employee Handbook, is for the new employee to demonstrate "work proficiency, dependability, expected behaviors, ability, initiative, attitude, and cooperation . . . ." Under Blehm's arguments, a substantial portion of a new employee's probationary period could expire before the employee ever sets foot on the employer's premises. It is illogical that any of the purposes of probation can be furthered by starting a probationary period before the new employee actually starts to work. The illogic is compounded here, where Blehm was actually working for another employer—the hospital in Sidney, Montana—during at least part of the period that she now contends that she was a probationary employee of St. John's.

¶16 The only reasonable construction of St. John's probationary period is that it began for Blehm when she began work as Human Resources Manager on October 6, 2008. St. John's terminated Blehm's employment within the probationary period and § 39-2-904(2), MCA, therefore applies. St. John's could terminate Blehm's employment "for any reason or for no reason." The District Court's conclusion on this issue is affirmed.

¶17 Issue 2: Whether the District Court erred in refusing to imply a common-law exception to the Wrongful Discharge From Employment Act based upon Blehm's

6

contention that she was terminated for refusing to violate public policy or for reporting a violation of public policy.

¶18    The Wrongful Discharge from Employment Act provides a cause of action against an employer in favor of an employee who has been wrongfully discharged. Section 39-2-905, MCA. A discharge is wrongful only if:

> (a) it was in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy;
> (b) the discharge was not for good cause and the employee had completed the employer's probationary period of employment; or
> (c) the employer violated the express provisions of its own written personnel policy.

Section 39-2-904(1), MCA. As noted above, the Act specifically provides that employment maybe terminated for any reason or for no reason during a probationary period. Section 39-2-904(2), MCA.

¶19    The Act provides the exclusive remedy for wrongful discharge from employment, § 39-2-902, MCA, and preempts common-law remedies.

> **Preemption of common-law remedies**. Except as provided in this part, no claim for discharge may arise from tort or express or implied contract.

Section 39-2-913, MCA. Nevertheless, Blehm contends that she was terminated because of the positions she took on various issues such as employee management and evaluation, reporting of work place accidents, and executive salary. She claims that an employee discharged during probation should still have the right to sue if he or she alleges that the discharge arose from a refusal to violate public policy or for reporting a violation of public policy.

7

¶20 The District Court correctly considered and rejected Blehm's argument. The role of the Court in construing a statute "is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA; *Miller v. District Court*, 2007 MT 149, ¶ 38, 337 Mont. 488, 162 P.3d 121. Adopting Blehm's argument would require this Court to substantially re-write critical provisions of the Act, contrary to § 1-2-101, MCA.

¶21 Blehm argues that this Court should recognize a common-law exception to § 39-2-904, MCA, any time an employee alleges that he or she was discharged during the probationary period for refusing to violate public policy. In support Blehm cites case law from various jurisdictions that have recognized such an exception in "at will" employment. While some of those cases are also from Montana, none dealt with claims under the Wrongful Discharge From Employment Act, and are therefore inapplicable here.[2] Montana's former at-will employment statute, § 39-2-503, MCA, was repealed in 2001 and essentially replaced with § 39-2-904(2), MCA. The clear intent of the Act was to replace common-law causes of action in wrongful discharge cases.

¶22 Blehm finally contends that she was denied equal protection of the law by the District Court's refusal to construe a common-law exception to § 39-2-904(2), MCA. She contends that probationary period employees who can be terminated for any reason "do not receive the same protection from laws (such as workers' compensation laws) that

---

[2] Blehm's reliance upon *Ritchie v. Town of Ennis*, 2004 MT 43, 320 Mont. 94, 86 P.3d 11, is misplaced. That case was expressly not decided under the Wrongful Discharge From Employment Act, but under a separate statute applicable to municipal law enforcement officers, § 7-32-4113, MCA. *Ritchie*, ¶ 16.

other employees have." Blehm then contends that the Act, or the construction of it, should be subject to the strictest scrutiny because a probationary employee is less likely to report violations of public policy. This, she contends, puts all employees' lives and health at risk and that since "life is a fundamental right," any classification that infringes on the fundamental right to life must be strictly construed.

¶23 Equal protection of the law is guaranteed by Article II, Section 4 of the Montana Constitution. The rule of equal protection is that persons similarly situated should receive like treatment. *Satterlee v. Lumberman's Mutual Cas. Co.*, 2009 MT 368, ¶ 15, 353 Mont. 265, 222 P.3d 566. Resolution of an equal protection challenge to a statute is determined by identifying the classes of persons involved; by determining the appropriate level of scrutiny; and applying the appropriate level of scrutiny to the situation involved. *Satterlee*, ¶¶ 15-18.

¶24 Blehm does not discuss the class distinction involved in her equal protection challenge. In order to move forward, however, we will assume that the classification involved is probationary and non-probationary employees.

¶25 Blehm asserts that this Court should apply the highest level of strict scrutiny, based upon her contention that people who report violations of public policy help protect the lives of others and that therefore a fundamental right to life is implicated. This is a tenuous thread upon which to hang a contention that constitutional rights have been abridged. Here there is no suspect classification such as race or gender and a fundamental right to life is not even remotely implicated by the facts of the case. Rather, it is appropriate to use the lower-tier rational basis standard to review the application of

9

the statute in this case. That was the standard applied in *Meech v. Hillhaven West, Inc.*, 238 Mont. 21, 776 P.2d 488 (1989) in the context of an equal protection challenge to the damages limitation of the Wrongful Discharge From Employment Act.

¶26 Applying a rational basis analysis to the statute, we determine that § 39-2-904(2), MCA, is rationally related to the purposes of the Act, which include limiting the scope of claims for wrongful discharge and defining the respective rights of employers and employees. Section 39-2-904, MCA, seeks to strike a balance between the interests of employees and employers, and provides significant protections to employees who complete their probationary period. The statute recognizes the importance of a probationary period to the success of an employment relationship. That importance was reflected and explained in the language Blehm herself adopted for the St. John's employee handbook.[3]

¶27 Statutes carry a presumption of constitutionality, *Brewer v. Ski Lift*, 234 Mont. 109, 112, 762 P.2d 226, 228 (1988); *LaFournaise v. Montana Dev. Center*, 2003 MT 240, ¶ 26, 317 Mont. 283, 77 P.3d 202, that Blehm has not overcome in this case.

¶28 The District Court is affirmed.


/S/ MIKE McGRATH

---

[3] Blehm also argues that § 39-2-904, MCA, violates the Supremacy Clause of the United States Constitution unless it is construed to allow an exception for employees who claim they were terminated for refusal to violate public policy. There is no support for this contention. Section 39-2-912, MCA, exempts from the Act a wide range of claims based upon "any other state or federal statute that provides a remedy for contesting the dispute."

We concur:


/S/ JIM RICE
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON