FILED

11/07/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0062

DA 17-0062

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 269

MARK DUNDAS,

        Plaintiff and Appellant,

    v.

WINTER SPORTS, INC.,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
In and For the County of Flathead, Cause No. DV-15-852(D)
Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Gary Crowe, Attorney at Law, Kalispell, Montana

        For Appellee:

            Mikel L. Moore, Christopher C. DiLorenzo, Moore, Cockrell, Goicoechea
& Johnson, P.C., Kalispell, Montana

Submitted on Briefs:  October 4, 2017

Decided:  November 7, 2017

Filed:

                          _____
                                  Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Mark Dundas appeals from the District Court's January 20, 2017 Order Granting Defendant's Motion for Summary Judgment. We affirm.

¶2 The issue on appeal is whether the District Court properly granted summary judgment dismissing Dundas' claims for wrongful discharge under the Montana Wrongful Discharge From Employment Act (WDEA), Title 39, chapter 2, part 9, MCA.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Defendant Winter Sports, Inc. (WSI) operates the Whitefish Mountain Resort in Montana.[1] Its primary operation is a winter ski resort, but it also has limited operations in other seasons. The majority of WSI's employees are seasonal and work less than a full year. WSI has approximately 100 year-round employees, but that number increases to approximately 525 in the winter season. The winter seasonal employees work a season that varies with the snowfall, and they may be off work as long as seven months between the end of one winter season and the beginning of the next.

¶4 Dundas was a winter seasonal employee at WSI during each of the winter seasons from 2003 to 2014. WSI hired Dundas for the 2014-2015 winter season for a new position of Snow Safety Coordinator. Dundas' job was set to begin approximately November 19, 2014, and to end April 12, 2015, depending upon the weather. He also

---

[1] The facts are based upon the "undisputed facts" found by the District Court as part of the consideration of the motion for summary judgment.

applied for the positions of Ski Patrol Manager and Assistant Ski Patrol Manager but was not hired for either position.

¶5 According to WSI managers, Dundas was angry because he did not get hired for either of the Ski Patrol positions. Dundas sent an email to Chester Powell, Director of Mountain Operations, that was critical of the hiring process and that stated he had a "very low opinion" of Powell and of Dan Graves, CEO of the WSI operation. The WSI managers also determined that Dundas expressed his anger to other employees "in a manner that WSI management found insubordinate and inappropriate." The WSI Ski Patrol Manager David Stephens counseled Dundas that his negative attitude and his profane statements to others about his job and his superiors were inappropriate. WSI terminated Dundas on March 1, 2015, because of his inappropriate behavior.

¶6 Dundas sued WSI for damages for wrongful discharge under the Montana Wrongful Discharge From Employment Act, Title 39, chapter 2, part 9, MCA. Dundas alleged that WSI lacked good cause to terminate his employment (§ 39-2-904(1)(b), MCA); that WSI failed to follow its written personnel policies (§ 39-2-904(1)(c), MCA); and that WSI terminated him for refusing to violate public policy or for reporting violations of public policy (§ 39-2-904(1)(a), MCA). WSI moved for summary judgment on all the claims. The District Court held a hearing on January 18, 2017, and subsequently entered the order granting WSI's motion, concluding that Dundas did not have a wrongful discharge claim because he was a probationary employee who could be terminated for any reason as provided in § 39-2-904(2)(a), MCA. Dundas appeals.

3

**STANDARD OF REVIEW**

¶7 This Court reviews a district court's decision on summary judgment to determine whether it is correct, using the same criteria under M. R. Civ. P. 56. *Pilgeram v. GreenPoint Mortgage*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839.

**DISCUSSION**

¶8 *Issue: Whether the District Court properly granted summary judgment dismissing Dundas' claims for wrongful discharge under the Montana Wrongful Discharge From Employment Act (WDEA), Title 39, chapter 2, part 9, MCA.*

¶9 With few exceptions, the WDEA is the exclusive remedy under Montana law for an employee to recover damages for wrongful discharge. Section 39-2-902, MCA; *Kuszmaul v. Sterling Life Ins. Co.*, 2012 MT 154, ¶ 22, 365 Mont. 390, 282 P.3d 665. The WDEA preempts all common-law remedies for discharge claims. Section 39-2-913, MCA; *Blehm v. St. John's Lutheran Hospital*, 2010 MT 258, ¶ 19, 358 Mont. 300, 246 P.3d 1024. One of the purposes of the WDEA is to protect employees from wrongful discharge "after the end of their probationary period." *Blehm*, ¶ 11. The existence of a probationary period of employment is an "integral part" of the WDEA, and an employer may establish a specific employment probationary period. Section 39-2-904(2)(b), MCA; *Blehm*, ¶ 15. During probationary employment either the employer or employee may terminate the relationship at will "for any reason or for no reason." Section 39-2-904(2), MCA.

¶10 A crucial issue in the proceedings below was whether Dundas was a probationary employee when he was terminated. The District Court determined that he was a

probationary employee and therefore that he could be terminated for any reason or for no reason as provided in § 39-2-904(2), MCA.

¶11 During the time that Dundas was associated with WSI, the Employee Handbook provided for categories of employees, including "seasonal employees" who are "hired to work for a period of less than 12 months." The Handbook provided that:

> Seasonal employees are hired to work for a pre-determined period of less than 12 months. At the end of the temporary period, employment is terminated. If a seasonal employee wishes to be considered for employment following termination, they may reapply but, if hired, *they are considered a new employee for all purposes*.

(Emphasis added.) The Handbook also provides that the probationary employment period is the "first 6 months of employment."

¶12 Dundas argues that the Employee Handbook should be construed so that his six-month probationary employment period ended years ago, during his first or second terms of seasonal employment. He argues that he was in "continuous employment" at WSI from 2003 until he was expressly terminated in March 2015. This argument, however, is contrary to the express provisions of the Employee Handbook relating to the "temporary period" of seasonal employment. As provided in the Employee Handbook, beginning in 2003 Dundas was separately hired for each new winter season that he worked, and at the end of each of those winter seasons his employment was terminated. The District Court found that Dundas acknowledged that he was "rehired" by WSI at the beginning of each new winter season, in accordance with the Employee Handbook. This is consistent with both the Employee Handbook and the WDEA, which provides that a

5

particular employment "is terminated by the expiration of its appointed term." Section 39-2-501(1), MCA. Each seasonal term of employment at WSI was terminated at the end of the winter season.

¶13 The record is clear as to WSI's policy on seasonal employees and as to the probationary period. Dundas argues that a seasonal employee could never be off probation because of the limited period of work. However, it is undisputed that seasonal work schedules varied with the weather and could therefore extend to six or more months if snow conditions warranted. In any event, we agree with the District Court that there is no reason to construe the plain language of the Employee Handbook in any way other than as it is written and that, viewing the document as a whole, the Employee Handbook is not ambiguous in this regard. A seasonal re-hire is clearly "a new employee for all purposes," including for the purposes of the probationary period. As noted above, an employer may define the period of probationary employment, and WSI has done so. As provided in the Employee Handbook, the probationary employment period is the "first 6 months of employment."

¶14 When Dundas was re-hired for the 2014-2015 winter season he was a new employee "for all purposes," and began a six-month probationary period. He was still on probation when WSI terminated his employment four months later.

¶15 Dundas contends that he was entitled to imposition of progressive discipline before being terminated. However, as the District Court found, the fact that he was a probationary employee precludes such an argument because he could be fired for any

6

reason or for no reason, as specifically provided in the WDEA. Section 39-2-904(2), MCA.

¶16 Finally, Dundas contends that he was terminated for refusing to violate public policy or for reporting a violation of public policy. He contends that the District Court should have further considered this issue and should have allowed him to prove that he was terminated for refusing to violate public policy or for reporting a violation of public policy.

¶17 The WDEA provides that one of the categories of "wrongful" discharge is a discharge "in retaliation for the employee's refusal to violate public policy or for reporting a violation of public policy." Section 39-2-904(1)(a), MCA. This is in effect a protection for "whistle blowers." *Krebs v. Ryan Oldsmobile*, 255 Mont. 291, 296, 843 P.2d 312, 315-16 (1992). The WDEA defines "public policy" as "a policy in effect at the time of the discharge concerning the public health, safety, or welfare established by constitutional provision, statute, or administrative rule." Section 39-2-903(7), MCA. The District Court considered this issue in the summary judgment proceeding and determined the Dundas failed to establish any constitutional provision, statute or administrative rule that WSI violated or that he reported. The District Court properly granted summary judgment to WSI on this issue because Dundas failed to produce "any evidence" to support his contention.

## CONCLUSION

¶18 The District Court properly granted summary judgment to WSI on Dundas' claims for wrongful discharge. Affirmed.

7

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE