FILED

05/05/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0270

DA 25-0270

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 94

MICHELLE H. POPE,

      Plaintiff and Appellant,

  v.

MONTANA DEPARTMENT OF
CORRECTIONS, et al.,

      Defendants and Appellees.

APPEAL FROM:   District Court of the Fourth Judicial District,
                 In and For the County of Missoula, Cause No. DV-21-255
                 Honorable Tara J. Elliott, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

           Torrance L. Coburn, Tipp Coburn Lockwood, PC, Missoula, Montana

      For Appellee:

           Blake R. Koemans, Deputy Chief General Counsel, Montana
           Department of Corrections, Helena, Montana

                       Submitted on Briefs:  January 14, 2026

                                 Decided:  May 5, 2026

Filed:

                       _____
                               Clerk

Chief Justice Cory J. Swanson delivered the Opinion of the Court.

¶1     Michelle H. Pope (Pope) appeals from a March 13, 2025 Order of the Fourth Judicial District Court.  The District Court granted the Department of Correction's (DOC) Motion for Summary Judgment. We reverse and remand.

¶2     We restate the issues on appeal as follows:

*Issue One:  Whether the District Court erred by granting summary judgment in favor of the DOC.*

*Issue Two:  Whether the District Court erred in finding the Union did not breach its duty of fair representation.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     In March 2019, Pope began working as a travel nurse for the DOC.  In this position, Pope was employed by Supplemental Health Care and contracted to the DOC, Clinical Services Division at the Montana State Prison.  The position lasted from March 2019 until December 31, 2019.

¶4     On December 17, 2019, the DOC presented Pope with an offer letter (First Letter) offering her a position as a Per Diem Registered Nurse (PRN).  The First Letter stated the position was a Union position subject to a six-month probationary period.  On January 1, 2020, Pope accepted the offer and immediately transitioned to her new role as a PRN.  By accepting this position, Pope became a member of the Federation of Montana State Prison Employees, Local #4700 (Union), and became privy to the Collective Bargaining Agreement (CBA) with the DOC.

2

¶5 On May 12, 2020, the DOC gave Pope another offer letter (Second Letter) offering her a position as a Full-Time Registered Nurse (RN). The Second Letter also stated the position was a Union position subject to a six-month probationary period. Two days later, Pope accepted the offer, but continued to work as a PRN until May 23, 2020, when she transitioned into her role as an RN. Pope was not interviewed for either position with the DOC.

¶6 On August 11, 2020, the DOC terminated Pope's employment pursuant to Article 3 of the CBA, which stated she could be terminated at any time because she was a probationary employee. The termination letter did not set forth any other just cause for the termination. In response to the termination letter and pursuant to the CBA complaint process, Pope filed a step 3 grievance with the DOC.

¶7 On September 1, 2020, the Director of the DOC determined Pope was not entitled to the CBA grievance process as a probationary employee and denied Pope's grievance. After this denial, Pope requested the Union take her grievance to final and binding arbitration pursuant to Article 14, Section 2 of the CBA. The Union denied Pope's request on the basis that she was within her probationary period of employment.

¶8 On March 15, 2021, Pope filed her complaint in the District Court alleging wrongful termination in breach of the CBA and breach of the duty of fair representation by the Union. On November 6, 2024, the DOC filed a motion for summary judgment alleging since Pope was a probationary employee at the time of her termination, the DOC "need not show good cause to justify the discharge." Following an oral argument, the District Court granted the motion in favor of the DOC and dismissed the case with prejudice.

**STANDARD OF REVIEW**

¶9 We review summary judgment rulings de novo. *CB1 v. Hove*, 2025 MT 36, ¶ 9, 420 Mont. 380, 564 P.3d 434 (citing *Perl v. Grant*, 2024 MT 13, ¶ 10, 415 Mont. 61, 542 P.3d 396). We apply the same evaluation as the district court under M. R. Civ. P. 56 when we review a court's grant of summary judgment. *Nelson v. Nelson*, 2005 MT 263, ¶ 14, 329 Mont. 85, 122 P.3d 1196 (internal citations omitted). Summary judgment is proper only when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3). "A genuine issue of material fact is a fact materially inconsistent with proof of an essential element of a claim or defense at issue." *Speer v. State*, 2020 MT 45, ¶ 17 n.4, 399 Mont. 67, 458 P.3d 1016 (citing *Mountain W. Bank, N.A. v. Mine & Mill Hydraulics, Inc.*, 2003 MT 35, ¶ 28, 314 Mont. 248, 64 P.3d 1048). The moving party bears the initial burden to demonstrate there is no genuine issue of material fact. Once that burden is met, the opposing party "must present substantial evidence essential to one or more elements of its case to raise a genuine issue of material fact." *Dewey v. Stringer*, 2014 MT 136, ¶ 6, 375 Mont. 176, 325 P.3d 1236 (internal citations omitted; internal quotations omitted). Summary judgment motions are decided based on pleadings, discovery and disclosure materials on file, and any affidavits. M. R. Civ. P. 56(c)(3). Evidence presented in a summary judgment proceeding must be viewed in light most favorable to the nonmoving party and all reasonable inferences must be drawn in their favor. *Nelson* ¶ 15. "Summary judgment is an extreme remedy which should never be substituted for a trial if a material factual controversy exists." *Bellanger*

4

*v. Am. Music Co.*, 2004 MT 392, ¶ 9, 325 Mont. 221, 104 P.3d 1075 (internal quotations omitted).

## DISCUSSION

¶10 *Issue One: Whether the District Court erred by granting summary judgment in favor of the DOC.*

¶11 As a prerequisite to Pope making her claim against the DOC, she first must prove the Union breached its duty of fair representation which we discuss in issue two. However, we begin with the first issue because it informs the second.

¶12 Montana adopted the Wrongful Discharge from Employment Act (WDEA) in 1987. *Blehm v. St. John's Lutheran Hosp., Inc.*, 2010 MT 258, ¶ 11, 358 Mont. 300, 246 P.3d 1024. The WDEA protects employees from wrongful discharge after the end of a probationary period. *Blehm*, ¶ 11. During this probationary period, either the employer or employee may terminate the employment at will "for any reason or for no reason." *Dundas v. Winter Sports, Inc.,* 2017 MT 269, ¶ 9, 389 Mont. 223, 410 P.3d 177 (citing § 39-2-904(2), MCA). Section 39-2-910, MCA, allows employers to define the length of the probationary period, or if not defined, provides a default length of 12 months. Generally, the WDEA is the exclusive remedy for a wrongful discharge from employment. Section 39-2-902, MCA. However, one exception to this exclusivity is when an employee is covered by a collective bargaining agreement. Section 39-2-912(1)(b), MCA. Where there is a collective bargaining agreement, that agreement controls. Here, the CBA provides for a six-month probationary period, a method to extend that period, and a grievance procedure in the event of wrongful termination.

5

¶13 The key fact at issue in this case is whether Pope was a probationary employee at the time of her termination. On appeal, Pope argues the District Court erred in granting summary judgment on the basis that Pope was a probationary employee because the DOC's own documents and statements raise a genuine issue of material fact as to that matter. Pope's probationary period was impacted by several DOC documents. First, the CBA provides different categories of employees and distinguishes "permanent employees" from "short-term workers." The CBA defines a short-term worker in the following way:

> Short-term worker means a person who 1) is hired for a hourly wage established by the Employer; 2) may not work for the Employer for more than 90 days in a continuous 12-month period; 3) is not eligible for permanent status; 4) may not be hired into another position by the Employer without a competitive selection process; and 5) is not eligible to earn the leave and holiday benefits provided in 2-18-600, MCA, or the group insurance benefits provided in 2-18-700, MCA.

An employee reaches "permanent status" once she completes her probationary period. Section 2-18-101(20), MCA. Short-term workers are not eligible for permanent status and may be discharged without cause pursuant to the CBA. *See also* § 2-18-101(25)(f), MCA. The DOC asserts Pope was a short-term worker as a PRN and not subject to a probationary period from January 1, 2020, to May 23, 2020. However, the First Letter for the PRN position stated that the position was a Union position and "[a]s a new state employee [Pope] [would] be required to serve a six month probationary period." In addition to these conflicting DOC documents, the Second Letter also stated the RN position was a Union position and "[a]s a new state employee [Pope] [would] be required to serve a six month probationary period" which would be presumed to start anew on May 23, 2020. According

to the terms of the CBA, "the Employer shall have six months after employing an individual to determine the individual's competency."

¶14     This case presents genuine issues of material fact which the District Court drew inferences to resolve.  However, the District Court erred in drawing such inferences in favor of the DOC.  Here, we view the evidence in light most favorable to Pope and all reasonable inferences will be drawn in her favor.  *Nelson*, ¶ 15.

¶15     Whether Pope was a probationary employee in the period between the First Letter and the Second Letter is a disputed fact.  The language in the First Letter, which included a six-month probationary period beginning on January 1, 2020, and expiring before Pope's termination, conflicted with the short-term nature of Pope's employment.  The District Court had to infer this language was a mistake, or otherwise invalid, to determine there was no dispute of fact regarding the probationary period.  The DOC does not specifically dispute this language other than asserting the "DOC probably used a form letter, accidentally put [the probationary period] in . . ." during the oral argument.  A genuine issue of material fact exists as to this language, and the District Court erred in drawing an inference in the DOC's favor.

¶16     There is a dispute as to whether Pope was a short-term worker pursuant to Article 7, Section 1, Paragraph L of the CBA.  Jared Hardman, a DOC Human Resources Generalist, testified the DOC classifies PRNs as "short-term variable workers."  The District Court determined Pope was a short-term worker because she was hired for a set hourly wage, she worked less than 90 days in the PRN position, she did not earn leave or holiday benefits, and "she was not eligible to be hired into another position without a competitive selection

7

process." However, the District Court made an inference in the DOC's favor in response to Pope's argument she could not have been a short-term worker because she was hired as a full-time RN without a competitive selection process in violation of the terms of the CBA. The court inferred that since the CBA "Recruitment, Selection and Promotion" requirements did not include an interview process, the DOC did not fail to conduct a competitive selection process. However, it is not clear from the record what actions were taken as part of Pope's hiring process.

¶17 The District Court states in its order, "Even if it were unclear whether Pope met this prong of 'short-term worker,' it is clear that she was not a permanent employee on the face of [the First Letter]" while simultaneously ignoring the plain language on the face of the First Letter affording Pope a six-month probationary period. Therefore, the court found that while Pope was in the PRN position, she was a short-term worker and could not be subject to a probationary period. Although Pope met most of the qualifications of a short-term worker under the CBA, there are facts in the record which contradict the nature of Pope's employment as a PRN. These contradictions, when paired with the conflicting language of the First Letter regarding a probationary period, create a dispute regarding the nature of Pope's probationary status. The District Court seemingly bypassed this dispute of fact.

¶18 It is also disputed whether Pope extended her probationary period when she signed the Second Letter. The District Court made an inference in the DOC's favor when it determined that even if the probationary period had in fact started on January 1, 2020, Pope agreed to extend the probationary period when she accepted the full-time RN position by

8

signing the Second Letter. When making this inference, the court disregarded Article 3, Section 1 of the CBA which states:

> The [Union] agrees that for non-POST-certified positions[1], on individual cases only and only by mutual assent between the [Union], the individual in question and the Employer[,] shall any individual have his/her period of probation extended for 30 days at a time not to exceed 90 days.

¶19    Here the Second Letter did not include the Union's mutual assent to extend Pope's probation. Even if the Union had assented, the Second Letter would have extended the probation period by six months, exceeding the limit allowed by the CBA. The DOC argues the language in the CBA refers to "positions" and not to individual employees. It further argues the express purpose of the probationary period is to allow the employer to assess the employee's competency for their *position*, and therefore, an employee hired in a different *position* should be re-assessed for competency. However, Article 3, Section 1 of the CBA also states, "For *all* positions covered by this agreement . . . the Employer shall have six months after employing an *individual* to determine the *individual's competency*." (Emphasis added.) The language in the CBA does not specifically state whether an employee who is hired in a different position re-starts her probationary period.

¶20    In *Dundas*, we determined a seasonal employee began a new probationary period each time he was re-hired at the beginning of the season. *Dundas*, ¶ 13. This determination was based on clear language in the employee handbook stating seasonal employees are "considered a new employee for all purposes." *Dundas*, ¶ 11. Here, the CBA is silent as to whether an existing short-term employee starts a new probationary period upon

---

[1] The parties agree that Pope held a non-POST-certified position.

9

accepting a new position. This is likely because a short-term employee is not typically subject to a probationary period under the CBA. Additionally, there is no language in the CBA requiring an employee to start her probation period over when she is hired in a different position.

¶21 The Montana Probation Requirements Policy "covers all positions in Montana's executive branch except temporary and *short-term workers*, student interns, elected officials, the personally appointed staff of elected officials, the Montana university system, the Montana State Fund, and any other position specifically excluded under 2-18-103, and -104, MCA." (Emphasis added.) Notably, if a conflict arises between these policy provisions and a CBA, the CBA takes precedence. Under these state probation requirements, a state employee "attains permanent status after satisfactorily completing the requirements of the probationary period" and permanent status is retained throughout internal promotions, reassignments, reclassifications, or even transfers to a new agency. In this situation, agency management may adopt a trial period as part of an ongoing performance evaluation process. During this trial period, the employee retains permanent status but may be returned to the former position for failure to meet the conditions of the trial period. Montana Probation Requirements Policy, Dep't of Admin. State Hum. Res. Div., https://perma.cc/6BCW-AFA5 (last visited April 29, 2026).

¶22 The DOC asserts, "The fact that [Pope] was a CBA covered employee prior to May—even if she wasn't a short-term employee—has no bearing on the [DOC's] right to impose a probationary period on a new position to assess her competency for that position." If, for the sake of argument, we assume Pope was not a short-term worker and the

10

probationary provision in the First Letter applied, she would have been eligible for permanent status at the end of her first six months of employment with the DOC, and the DOC could not have extended her probationary period in the manner it did. Conversely, if we assume Pope was a short-term worker, she would not have been eligible for permanent status until she accepted the RN position on May 23, 2020, and could not have had a probationary period in which the DOC could extend. By its very nature, short-term employment cannot include a specific probationary period. Therefore, Pope's probationary status hinges on the conflicting language in the CBA and the First Letter. The DOC is responsible for knowing the contents of the CBA and following its terms. The errors of the DOC and the Union should not be construed against the rights of the employee.

¶23 The District Court seemingly omitted (both from its summary judgment standard and its analysis) a crucial rule regarding evidence presented in a summary judgment proceeding. The evidence "must be viewed in light most favorable to the nonmoving party" and all reasonable inferences must be drawn in their favor. *Nelson*, ¶ 15. The court makes inferences in the DOC's favor to then conclude there were no disputed material facts. The District Court lists as an undisputed fact in its Order that "[a]t the time of her termination, Pope was a probationary employee." This fact was certainly material to Pope's claims and was clearly disputed by Pope as explained above. The District Court reached its conclusion only by drawing inferences in favor of the moving party contrary to proper summary judgment analysis.

¶24 Pope presented sufficient evidence to create a genuine issue of material fact as to whether she was in a probationary period at the time of her termination. "Questions of fact

11

may not be adjudicated on motions for summary judgment." *Bellanger* ¶ 15. Thus, the District Court erred in granting the DOC's motion for summary judgment.

¶25 *Issue Two: Whether the District Court erred in finding the Union did not breach its duty of fair representation.*

¶26 Pope's claim against the Union was settled and dismissed with prejudice as a final adjudication on the merits. Generally, the doctrine of collateral estoppel bars reconsideration of issues that were already conclusively decided. *Brishka v. State*, 2021 MT 129, ¶ 11, 404 Mont. 228, 487 P.3d 771. However, this case presents a unique issue. As a Union member covered by the CBA, Pope may not pursue a claim against the DOC without first proving the Union breached its duty of fair representation when it failed to advance her grievance to binding arbitration. The DOC does not assert anywhere in its briefing that Pope's settlement with the Union somehow precludes her claim against the DOC, nor does Pope challenge the settlement. However, the issue must be addressed in accordance with our decision to allow Pope to proceed on the issues discussed above.

¶27 We do not address the issue of whether the Union breached its duty of fair representation on the merits, but rather pursuant to the summary judgment standard as a necessary prerequisite to Pope's claims against the DOC.

¶28 In Montana, public employees have a statutory right to join and bargain collectively through a labor organization. Section 39-31-201, MCA. These labor unions, as the exclusive bargaining agents of their members, "have a common law duty to fairly represent all of their members in the enforcement of grievance rights provided by collective bargaining agreements." *Folsom v. Mont. Pub. Emps. Ass'n*, 2017 MT 204, ¶ 23,

388 Mont. 307, 400 P.3d 706. "However, due to the broad discretion that unions must have to balance the often competing interests of individual members and the union as a whole, mere negligence is insufficient alone to constitute a breach of the duty of fair representation." *Folsom*, ¶ 23. "A breach of the duty of fair representation thus requires proof of fraud, bad faith, gross negligence, or other arbitrary or unlawful disregard or discrimination in the enforcement of grievance rights." *Folsom*, ¶ 23. An employee who can show the union breached its duty of fair representation is entitled to pursue a claim outside of the WDEA for violation of the CBA. *Fowler v. Dep't of Just.*, 2024 MT 24, ¶ 19, 415 Mont. 140, 543 P.3d 575.

¶29   Pope's grievance was denied by the Director of the DOC pursuant to a provision in the CBA which provides, "An employee may appeal his/her dismissal, suspension, or other punitive discipline through the grievance procedure, except that a probationary employee may be separated from service without recourse to the grievance procedure." The Union then declined to advance Pope's grievance to arbitration which was the final step in the grievance process under the CBA. Pope asserts the Union acted arbitrarily or with gross negligence by accepting the DOC's probationary-status position. The DOC responds that Pope failed to meet the demanding standard for proving a breach of the duty of fair representation. Because the parties' arguments on that issue turn on the same disputed probationary-status premise discussed above, the District Court could not resolve the fair-representation prerequisite in the DOC's favor as a matter of law.

¶30   A union retains "broad discretion" in deciding whether to pursue arbitration. *Fowler*, ¶ 17; *Folsom*, ¶ 23. However, "a union may not arbitrarily ignore a meritorious

13

grievance or process it in a perfunctory manner." *Teamsters Local No. 45 v. State*, 223 Mont. 89, 96, 724 P.2d 189, 193 (1986) (internal citation omitted). "Even unintentional acts or omission by union officials may be considered arbitrary if they reflect reckless disregard for the rights of individual employees, if they severely prejudice the injured employee and if the policies underlying the duty of fair representation would not be served in shielding the Union from liability in the particular case." *Teamsters,* 223 Mont. at 96, 724 P.2d at 194 (citing *Robesky v. Qantas Empire Airlines Ltd.*, 573 F.2d 1082, 1088-90 (9th Cir. 1978)). Here, the District Court first relied on its determination that Pope was probationary to conclude both that the DOC correctly denied the grievance and that the Union reasonably declined to pursue arbitration. Because Pope's probationary status was genuinely disputed, the court also could not conclusively determine, as a matter of law that Pope would be unable to prove the fair-representation prerequisite. On this record, the derivative fair-representation issue could not supply an independent basis for summary judgment in favor of the DOC.

¶31 Because the District Court erroneously resolved the predicate probationary-status issue on summary judgment, its ruling on the fair-representation prerequisite cannot stand. Therefore, Pope can assert her claim for wrongful termination in breach of the CBA against the DOC, and the prerequisite finding of whether the Union breached is left for further consideration by the fact finder.

## CONCLUSION

¶32     Reversed and remanded for further proceedings consistent with this Opinion.

                                        /S/ CORY J. SWANSON

We Concur:

/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE