No. 97-299

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

GERALD KULM,

Plaintiff and Appellant,

v.

MONTANA STATE UNIVERSITY-BOZEMAN
and ELISABETH CHARRON,

Defendants and Respondents.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Mike Salvagni, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles F. Angel; Angel Law Firm, Bozeman, Montana

For Respondents:

Leroy H. Schramm, Attorney at Law, Montana University
System, Helena, Montana

Submitted on Briefs: October 2, 1997

Decided:   November 4, 1997
Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Appellant Gerald Kulm (Kulm) appeals from the March 26, 1997 order of the Eighteenth Judicial District Court granting summary judgment for Respondents Montana State University-Bozeman (MSU) and Dr. Elisabeth Charron (Charron) and dismissing his complaint with prejudice.  We affirm.

Kulm raises the following issues:

1) Whether the District Court erred in granting summary judgment;

2) Whether Kulm's claims are preempted by the Wrongful Discharge from Employment Act (WDEA);

3) Whether Kulm's claims are barred by the Statute of Frauds;

4) Whether Charron is immune from suit under õ 2-9-305(5), MCA; and

5) Whether the District Court lacked jurisdiction because Kulm did not file a claim with the Department of Administration.

We hold that all of Kulm's claims are preempted by the WDEA, and thus we will not address the remaining issues.

Factual and Procedural Background

Kulm is a nationally recognized professor of mathematics and education.  In the fall of 1993, he responded to an add in the Chronicle of Higher Education for a position as a visiting professor at MSU.  MSU sought a professor to serve as an evaluator for the Step Project, a project designed to prepare teachers and courses in mathematics and science that was being funded for up to five years by the National Sciences Foundation.

Kulm was invited to MSU and interviewed by Drs. Lyle Anderson and Charron, the co-directors of the Step Project.  About two weeks later, Charron contacted Kulm and offered him a position as one of two Directors of Evaluation and Assessment for the Step Project at a salary of $72,000 per year.  Kulm accepted the position, resigned as a professor of mathematics education at Texas A&M, and moved his family to Bozeman.  The parties did not sign a written contract for employment.

Kulm began working part time in March of 1994 and full time in June of 1994.  That fall, following a meeting of the National Science Foundation's Visiting Committee, Drs. Charron and Anderson advised Kulm that his contract would not be renewed beyond April 30, 1995.  They never contended that Kulm's performance was deficient, but rather informed him that this decision was made on recommendation of the Visiting Committee, which believed that the National Science Foundation would be more likely to continue funding the Step Project if money were not being spent on two full-time evaluators.  Kulm was removed from his position as Director of Evaluation and Assessment in January 1995, but performed other duties for the Step Project through April, 1995.

On May 5, 1995, Kulm filed suit in the Eighteenth Judicial District Court, naming MSU and Charron, individually, as defendants.  Kulm alleged that MSU and Charron were guilty of fraud and negligent misrepresentation for inducing him to resign his position at Texas A&M and for representing that his position at MSU would be renewed annually for up to four years, depending on his performance and the project's funding.

Kulm asserted that Charron had required him to commit to the position for at least two years and that had she informed him that the position was only for one year, he would not have accepted. Kulm also alleged that MSU and Charron should be estopped from claiming that they had no duty to extend his employment beyond one year. Lastly, Kulm claimed that MSU and Charron breached their implied duty of good faith and fair dealing by soliciting a commitment from him that he would stay in the position for at least two years.

MSU and Charron filed a motion for summary judgment, arguing that Kulm's claims were barred by the WDEA, that the fraud claim was void as it involved an alleged promise of future employment, that all claims were barred by the Statute of Frauds, and that Charron, as an employee of MSU, was immune from suit. The District Court agreed and dismissed Kulm's complaint with prejudice.

## Standard of Review

We review a district court's grant of summary judgment de novo, thus applying the same standard as the district court pursuant to Rule 56, M.R.Civ.P. Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. In Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903 (citations omitted), we set forth our inquiry:

The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

## Discussion

By its own terms, the WDEA "sets forth certain rights and remedies with respect to wrongful discharge . . . [and] provides the exclusive remedy for a wrongful discharge from employment." Section 39-2-902, MCA. The WDEA explicitly preempts all common law remedies, providing that "no claim for discharge may arise from tort or express or implied contract." Section 39-2-913, MCA. Further, under the WDEA, "[t]here is no right under any legal theory to damages for wrongful discharge under this part for pain and suffering, emotional distress, compensatory damages, punitive damages, or any other form of damages, except as provided for in [the Act]." Section 39-2-905, MCA.

We have held that the WDEA does not bar all tort or contract claims arising in the employment context. Beasley v. Semitool, Inc. (1993), 258 Mont. 258, 261, 853 P.2d 84, 86. In Beasley, the plaintiff was hired by Semitool as a product marketing manager and claimed that Semitool's offer of employment included oral promises of stock

options, bonuses, and opportunities for advancement. Beasley, 853 P.2d at 84. After the plaintiff did not receive the benefits that he claimed he had been promised, he resigned and sued Semitool for breach of express and implied contract, breach of the covenant of good faith and fair dealing, and wrongful discharge. Beasley, 853 P.2d at 84-85. The district court granted summary judgment for Semitool, holding that the plaintiff's claims were barred by the WDEA. This Court, looking to the plain language of õ 39-2-913, MCA, held that "[t]he usual and ordinary meaning of 'claim for discharge' does not encompass any and all claims an employee may have against the employer, but only those claims for damages caused by an asserted wrongful discharge." Beasley, 853 P.2d at 86.

Kulm argues that this case does not fall within the preemptive scope of the WDEA, but rather is analogous to Beasley. Kulm argues that, like Beasley's claims, his claims arise out of the employer's breach of contract. In his complaint, Kulm alleges MSU and Charron are guilty of fraud and negligent misrepresentation for bringing him to Bozeman with false representations that his employment would be for more than one year. Kulm further alleges they should be estopped from claiming he was only hired for one year and that they breached the implied covenant of good faith and fair dealing by requiring him to commit to staying more than one year. Kulm contends that these claims arose in December, when MSU and Charron breached their contract by notifying Kulm that his contract would not be renewed. Because the alleged breach occurred several months before his actual discharge in April, Kulm urges us to hold that his claims are not "claims for discharge" and, thus, not preempted by the WDEA.

The District Court rejected Kulm's argument that this case is analogous to Beasley and looked instead to Dagel v. Great Falls (1991), 250 Mont. 224, 819 P.2d 186. In Dagel, the plaintiff brought claims for breach of the implied covenant of good faith and fair dealing and for infliction of emotional distress based on "an implied promise by the City that Plaintiff's employment would not be terminated and she would not be discharged except for just cause." Dagel, 819 P.2d at 194. The Dagel Court held that the claims were preempted by the WDEA, 819 P.2d at 196. In Beasley, the Court expressly distinguished Dagel, stating, "it is clear both the tort and implied contract claim in Dagel are completely and inextricably intertwined with and based on Dagel's termination and discharge." Beasley, 853 P.2d at 87. In the present case, the District Court held

that
each of Kulm's claims was based on "MSU's promise of continued employment, which was allegedly broken when the employment was terminated. Kulm, like Dagel, would have no conceivable cause of action is he were still employed."

We agree with the District Court that Kulm's claims are inextricably intertwined with and based upon his termination from employment. In Beasley, the breach of contract claims were based on the employer's failure to provide Beasley with stock options, bonuses, and other promised benefits. Beasley, 853 P.2d at 84. Beasley's claims were not contingent upon termination and, although Beasley did in fact resign prior to filing the action, his claim could have been brought regardless of whether he were still employed. In contrast, if MSU had not acted on its decision to terminate Kulm after one year, he would have no grievance. Kulm contends that he could have filed suit in the months before his termination. However, Kulm's claims, regardless of when they were filed, are premised upon his early termination from employment and are thus preempted by the WDEA.

Based on the foregoing, we affirm the decision of the District Court.


/S/  W. WILLIAM LEAPHART



We concur:

/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  TERRY N. TRIEWEILER
/S/  JIM REGNIER