Justice James Jeremiah Shea delivered the Opinion of the Court.
***502 ¶1 Appellants Karson Kluver and Genie Land Company, a Montana Corporation, (collectively "Kluver") appeal the Order of Sixteenth Judicial District Court, Rosebud County, granting summary judgment in favor of Barbara Needham, in her capacity as the Personal Representative of the Estate of Charles Kelly Kluver (Estate), and denying Kluver's cross-motion for summary judgment. We address the following issue:
Whether the District Court erred in granting summary judgment in favor of the Estate and by denying Kluver's cross-motion for summary judgment.
¶2 We affirm.
PROCEDURAL AND FACTUAL BACKGROUND
¶3 On September 13, 1977, Genie Land Company (Genie) was incorporated by its first president, Genie Philbrick Fulmer. Fulmer was the grandmother of brothers Charles Kelly Kluver (Kelly) and Karson Kluver (Karson). On June 4, 2005, after Fulmer passed, Kelly and Karson became the sole shareholders of Genie. Each received one-half of Genie's corporate stock.
¶4 When Kelly and Karson became the sole shareholders, Article IV, Section 4 of Genie's corporate by-laws contained a transfer restriction provision, which provided:
Shares of stock shall be transferred only on the books of the company by the holder thereof and may be transferred only to (1) the corporation, (2) one or more descendants of GENIE PHILBRICK FULMER, or (3) a third party, however, any transfer to a third person who is not already a stockholder in the corporation must be approved in advance by vote or written consent of all of the remaining stockholders of the corporation.
***503 Further, upon the death of any stockholder, the corporation shall have the right to redeem the stock at its book value and for this purpose, book value is defined as the amount at which stock is carried in the books of the corporation on the basis of tangible assets and any undivided profits, but not including intangible assets.
Article I, Section 8 of Genie's by-laws additionally provided that: "Any action required to be taken at a meeting of the shareholders may be taken without a meeting if a consent in writing, setting forth the action so taken, shall be signed by all the shareholders entitled to vote with respect to the subject matter thereof." Finally, Article VII, Section 1 of Genie's by-laws provided that: "Amendments to these by-laws may be made by a vote of the stockholders representing a two-thirds majority of all the stock issued outstanding at any annual stockholders meeting; or at any special stockholders meeting ...."
¶5 During Kelly's lifetime, he and his wife Barbara Needham were concerned that Genie's by-law's transfer restriction provision would prevent Kelly's family members from inheriting his one-half interest in Genie if he was the first of the two brothers to die. Subsequently, Kelly and Karson discussed amending Genie's by-laws to ensure each of the brother's families would inherit their respective share of Genie's stock.
¶6 In 2010, Kelly retained counsel to review Genie's by-laws. Counsel advised that *506 the current by-laws had the potential to undervalue each brother's half interest depending on who died first because it allowed for each brother's respective share of stock to be redeemed by the corporation at book value, which would be significantly lower than fair market value. Counsel recommended amending Genie's by-laws. However, neither brother took immediate action.
¶7 In November 2012, Karson began suffering from significant medical issues that he feared were life-threatening. On November 16, 2012, Kelly and Karson signed and entered into a written agreement (2012 Agreement) in which both agreed that: "[We] each want our shares in Genie Land Company to go to our respective families, and we are in agreement that by-laws or anything else should not prevent this in case of death of one of us or both or [sic] us." At the time the 2012 Agreement was executed, Karson and Kelly were the sole shareholders, directors, and officers of Genie.
¶8 On January 6, 2017, Kelly unexpectedly died. Needham was appointed personal representative of his Estate. On February 15, 2017, Kelly's Last Will and Testament was admitted to probate. In his will, Kelly devised his residuary estate to Needham, which included his ***504 stock in Genie.
¶9 On June 28, 2017, Karson and Needham attended a joint meeting of the shareholders and directors of Genie. By unanimous vote, Karson and Needham were elected to serve as directors and co-presidents of Genie. Karson and Needham agreed to a reduction in the number of directors and discussed options for an orderly division of the corporate assets.
¶10 On August 29, 2017, Needham was informed by Karson's counsel that Karson had decided: (1) the 2012 Agreement was unenforceable and not executed in strict accordance with Genie's by-laws; (2) Needham was not entitled to any ownership in Genie; and (3) Karson disavowed his obligations under the 2012 Agreement.
¶11 On September 8, 2018, the Estate filed a Verified Complaint for Declaratory Judgment and for Dissolution of Genie against Kluver. The Complaint alleged four counts: (I) Declaratory Judgment; (II) Breach of Contract; (III) Promissory Estoppel; and (IV) Judicial Dissolution of Corporation. On December 11, 2017, the Estate filed for partial summary judgment on Counts I, II, and III, seeking a declaratory judgment that Needham was entitled to Kelly's interest in Genie pursuant to the 2012 Agreement, and arguing that Karson had breached the 2012 Agreement. On January 2, 2018, Kluver filed a response and cross-motion for summary judgment, arguing that the 2012 Agreement was unenforceable and did not constitute a proper amendment to Genie's by-laws.
¶12 On April 5, 2018, the District Court granted partial summary judgment in the Estate's favor on Counts I and II and denied Kluver's cross-motion for summary judgment in its entirety. The District Court ruled that Needham was entitled to a declaratory judgment, that she is the rightful owner of Kelly's interest in Genie, that Karson breached the 2012 Agreement by impeding the transfer of Kelly's stock to Needham, and that Karson must specifically perform his obligations under the 2012 Agreement. The District Court additionally held that Count III of the Estate's Complaint was moot following its resolution of the first two counts. On October 16, 2018, the District Court found that all issues relating to Genie's stock ownership had been determined in its Order granting summary judgment, certified its decision as a final judgment for purposes of appeal, and bifurcated the Estate's Judicial Dissolution of Corporation claim.
STANDARD OF REVIEW
¶13 We review a district court's summary judgment ruling de novo, applying the criteria of M. R. Civ. P. 56.
***505 Capital One, NA v. Guthrie , 2017 MT 75, ¶ 11, 387 Mont. 147, 392 P.3d 158 (citing Pilgeram v. Greenpoint Mortg. Fund., Inc. , 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839 ). The determination of whether a party is entitled to judgment on the facts is a conclusion of law, which we review for correctness. Yorlum Props., Ltd. v. Lincoln County , 2013 MT 298, ¶ 12, 372 Mont. 159, 311 P.3d 748 (citing Gordon v. Kuzara , 2012 MT 206, ¶ 13, 366 Mont. 243, 286 P.3d 895 ).
*507 ¶14 Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. M. R. Civ. P. 56(c)(3) ; Guthrie , ¶ 11 (citing Roe v. City of Missoula , 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200 ). The evidence, as well as all justifiable inferences drawn from it, must be viewed in a light most favorable to the non-moving party. Svaldi v. Anaconda-Deer Lodge County , 2005 MT 17, ¶ 12, 325 Mont. 365, 106 P.3d 548 (citing Renville v. Fredrickson , 2004 MT 324, ¶ 9, 324 Mont. 86, 101 P.3d 773 ). Once the moving party has met its burden of demonstrating an absence of a genuine issue of material fact and the entitlement to judgment as a matter of law, the non-moving party must present material and substantial evidence, rather than mere conclusory or speculative statements, to raise a genuine issue of material fact. Smith v. Burlington N. & Santa Fe Ry. , 2008 MT 225, ¶ 10, 344 Mont. 278, 187 P.3d 639 (citing Rich v. Ellingson , 2007 MT 346, ¶ 12, 340 Mont. 285, 174 P.3d 491 ; Hiebert v. Cascade County , 2002 MT 233, ¶ 21, 311 Mont. 471, 56 P.3d 848 ).
DISCUSSION
¶15 Whether the District Court erred in granting summary judgment in favor of the Estate and by denying Kluver's cross-motion for summary judgment.
¶16 The purpose of the Uniform Declaratory Judgment Act, §§ 27-8-101 through -313, MCA, is to settle and afford " 'relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered.' " Murray v. Motl , 2015 MT 216, ¶ 11, 380 Mont. 162, 354 P.3d 197 (quoting § 27-8-102, MCA ). Any party to a written contract, or whose rights, status, or other legal relations are affected by a contract, may have its construction and validity determined and obtain a declaration of rights, status, or other legal relations from a district court. Sections 27-8-201, -202, MCA ; Murray , ¶ 11. A district court has the statutory authority to construe the terms of a contract, either before or after a breach. Section 27-8-203, MCA.
***506 ¶17 Under Montana law, a contract exists where there are: (1) identifiable parties capable of contracting; (2) consent of the parties; (3) a lawful object; and (4) a sufficient cause or consideration. Section 28-2-102, MCA. The consent of the parties to a contract must be free, mutual, and "communicated by each to the other." Section 28-2-301, MCA. Sufficient consideration is exchanged where "[a]ny benefit conferred or agreed to be conferred upon the promisor by any other person, to which the promisor is not lawfully entitled, or [where] any prejudice suffered or agreed to be suffered by the person, other than prejudice that the person is at the time of consent lawfully bound to suffer, as an inducement to the promisor ...." Section 28-2-801, MCA.
¶18 Under Montana corporate law, the shareholders may amend a corporation's by-laws without a meeting if all the shareholders entitled to vote on the action consent. Section 35-1-519(1), MCA. The action must be evidenced by at least one written consent "describing the action taken, signed by all the shareholders entitled to vote on the action, and delivered to the corporation ...." Section 35-1-519(1), MCA.
¶19 In this case, the District Court concluded the 2012 Agreement and residuary clause in Kelly's will entitled Needham to Kelly's shares of stock in Genie. The District Court additionally held that the 2012 Agreement was a valid, unambiguous, and enforceable contract that Karson breached by failing to transfer Kelly's shares to Needham. Finally, the District Court held that the 2012 Agreement effectively amended Genie's by-laws due to Kelly and Karson's unanimous consent, as the sole stockholders of Genie, to a new stock transfer provision, as reflected in the 2012 Agreement.
¶20 Kluver generally argues that the District Court relied on disputed facts in granting summary judgment in favor of the Estate. Kluver argues that the 2012 Agreement was an invalid amendment to Genie's by-laws because (1) it was entered absent the formality required by Genie's by-laws and Montana corporate law, and (2) the 2012 Agreement was ambiguous. Kluver additionally argues that the 2012 Agreement did not constitute a *508 valid contract because Karson was not competent to enter into the 2012 Agreement in 2012 due to his health scare.
¶21 The Estate counters that Genie's by-laws did not require a formal amendment to modify transfer of its stock, and that the 2012 Agreement was a valid contract. Therefore, the Estate argues that Needham is entitled to Kelly's half of Genie's stock pursuant to Kelly's will. We agree.
¶22 The formation of the 2012 Agreement created a valid contract that entitled Needham to Kelly's shares of stock after his death. The 2012 ***507 Agreement was valid because: (1) Karson and Kelly were identifiable parties; (2) Karson and Kelly's consent to the 2012 Agreement was free and mutual-despite his allegations, Karson failed to present evidence that he entered into the 2012 Agreement by mistake or that he was under duress in 2012 due to his health scare; (3) the 2012 Agreement had a lawful object, that being the transfer of corporate stock in accordance with the by-laws of a corporation; and (4) Karson and Kelly exchanged sufficient consideration when they gave up their ability to solely own Genie upon the death of the other brother in exchange for the assurance that their respective families would receive each brother's interest in Genie regardless of their order of death. See §§ 28-2-102, -301, -801, MCA.
¶23 Genie's by-laws make clear that its stock can be transferred to any third-party, without amendment, so long as it is approved "in advance by vote or written consent of all the remaining stockholders of the corporation." See § 35-1-236(2), MCA ("[t]he bylaws of a corporation may contain any provision for managing the business and regulating the affairs of the corporation that is consistent with law or the articles of incorporation. ..."). Kelly and Karson were the sole stockholders of Genie when they signed and entered into the written 2012 Agreement relating to the transfer of Genie's stock. Therefore, both Kelly and Karson validly approved the stock transfer arrangement in the 2012 Agreement under Genie's by-laws. See § 35-1-236(2), MCA.
¶24 Although a formal amendment was not required to modify the transfer of Genie's corporate stock under its by-laws, Kelly and Karson undertook the 2012 Agreement with the formality required for amendments under Genie's by-laws and under Montana law. The 2012 Agreement was made by a stockholder vote at a meeting representing a two-thirds majority of all the stock issued, satisfying Genie's by-law requirement for amendments. See § 35-1-236(2), MCA. Similarly, under Montana law, a formal meeting to amend Genie's by-laws was not required if all of the shareholders entitled to vote on the action consented-which occurred with the formation of the 2012 Agreement. See § 35-1-519(1), MCA. Thus, the District Court did not err in determining that the 2012 Agreement allowed for the stock transfer to Needham as Kelly's respective family member. See §§ 27-8-202, -203, MCA ; Murray , ¶ 11.
¶25 Kluver fails to present material and substantial evidence that the formation of the 2012 Agreement was deficient. See Smith , ¶ 10 ; Hiebert , ¶ 21. Viewing the evidence in the light most favorable to Kluver, there are no genuine issues of material fact regarding the 2012 ***508 Agreement and its implications to Genie's by-laws, and Needham is entitled to judgment as a matter of law. See M. R. Civ. P. 56(c)(3) ; Guthrie , ¶ 11 ; Svaldi , ¶ 12. The District Court correctly granted partial summary judgment in favor of the Estate. See Yorlum Props. , ¶ 12 ; Gordon , ¶ 13.
CONCLUSION
¶26 The District Court did not err in granting partial summary judgment in favor of the Estate pursuant to the 2012 Agreement and Genie's by-laws. We affirm.
We Concur:
DIRK M. SANDEFUR, J.
BETH BAKER, J.
LAURIE McKINNON, J.
INGRID GUSTAFSON, J.