DA 20-0054

IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 295N

EDWARD TOMSU,

     Plaintiff and Appellant,

  v.

UNIVERSITY OF MONTANA; JOHN DOES 1-10;
AND, ABC CORPORATIONS 1-10,

     Defendants and Appellees.

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and For the County of Missoula, Cause No. DV-16-783
                Honorable Shane A. Vannatta, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

             J.R. Casillas, Matthew A. McKeon, Datsopoulos, MacDonald & Lind, P.C.,
             Missoula, Montana

       For Appellees:

             Courtney Cosgrove, Special Assistant Attorney General, Risk Management
             and Tort Defense Division, Helena, Montana

Submitted on Briefs:  October 14, 2020

Decided:  November 24, 2020

Filed:

                                      Clerk

FILED

11/24/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0054

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Plaintiff and Appellant Edward Tomsu (Tomsu) appeals the Findings of Fact, Conclusions of Law, and Order issued by the Fourth Judicial District Court, Missoula County, on December 10, 2019, as well as the District Court's June 21, 2019 oral ruling which granted Defendant and Appellee University of Montana's Motion for Partial Summary Judgment on Counts II and III.  We affirm.

¶3     Tomsu was hired as a Budget Analyst by the University of Montana (UM) in 1997. In 2001, UM's Budget Office merged with its Office of Institutional Research, creating the new Office of Planning, Budget, and Analysis (OPBA).  Later that year, Tomsu was promoted to the working title of Assistant Director of Institutional Research.  In 2004, Tomsu was again promoted, this time to the working title of Associate Director of Institutional Research.  Bill Muse was Tomsu's supervisor at OPBA until his resignation in 2011.  Ed Wingard (Wingard), Budget Director, then served as interim Associate Vice President of OPBA until UM hired Dawn Ressel (Ressel) as Associate Vice President of OPBA in 2012.  Thereafter, both Tomsu and Wingard reported directly to Ressel.  Shortly after her arrival, Ressel promoted Tomsu's working title to Director of Institutional Research.

¶4     Mike Reid (Reid) was Ressel's direct supervisor from 2013 to 2017 in his capacity as Vice President of Administration and Finance. In June of 2014, Tomsu and Wingard met with Ressel to discuss a special appropriation. Wingard mentioned the need to follow rules and regulations, to which Tomsu verbally agreed. Ressel became agitated and told Tomsu to keep his opinions to himself. Wingard reported the incident to Reid and advised him that meetings like that did not reflect a productive work environment and later filed a discrimination complaint against Ressel; however, he ultimately decided not to proceed on the complaint. Wingard was reassigned from OPBA to a different department in late 2015.

¶5     After an ultimately failed attempt to implement a new budgeting software, during which the OPBA office was split into two teams, and Wingard's reassignment to a different department, Ressel indicated that the entire OPBA staff would now report directly to her. Tomsu perceived this as a demotion and questioned Ressel about the decision. Ressel informed Tomsu it was not a demotion, but Tomsu continued to have concerns about being demoted after he was sometimes left out of conversations and meetings. Tomsu also felt that the office's environment had gotten worse since Ressel's hiring.

¶6     Tomsu had not had an annual performance review since Ressel started, so he approached her in November 2015 to seek one. In addition, Tomsu noted he had no documentation addressing his promotion to the title of Director of Institutional Research. At a meeting with Ressel and Reid, Ressel provided a letter confirming Tomsu was the Director of Institutional Research, but noted that was only a working title due to state title limitations. After this meeting, Tomsu met with Sara Drake (Drake) in Human Resources to discuss his concerns. Drake suggested Tomsu could engage in mediation or coaching to

remedy his concerns. Tomsu declined both mediation and coaching, and also did not file a grievance against Ressel.

¶7 On December 1, 2015, Ressel sent an email to OPBA staff, requesting they complete an exercise. Tomsu became upset by the request and confronted Ressel, yelling at her and telling her she was the worst manager he had ever encountered. After yelling at Ressel, Tomsu left the office for the rest of the day. Tomsu did not receive any disciplinary action for not doing the exercise and Ressel ultimately withdrew the assignment for the entire OPBA staff. Over the next two weeks, Tomsu only worked occasionally as he used his leave time and investigated his legal options. On December 17, 2015, Tomsu tendered his resignation via email, noting he found his "current employment conditions to be untenable." Reid asked whether there was anything he could do to change Tomsu's mind about resigning, but Tomsu stated there was not as long as Ressel remained in her position. Reid was unwilling to fire Ressel, and Tomsu's resignation took effect on December 31, 2015.

¶8 On September 13, 2016, Tomsu sued UM for constructive discharge, negligent infliction of emotional distress, and intentional infliction of emotional distress. On August 16, 2018, UM filed Defendant's Motion for Summary Judgment on Counts II and III and Brief in Support, asserting Tomsu's emotional distress claims were barred by Montana's Wrongful Discharge from Employment Act (WDEA), or, in the alternative, Tomsu had not suffered emotional distress as a matter of law. On January 30, 2019, UM filed Defendant's Motion for Partial Summary Judgment on Count I and Brief in Support. After the parties briefed the motions, the District Court held a hearing on June 21, 2019.

4

At the conclusion of this hearing, the District Court orally denied UM's motion for partial summary judgment on Count I, but granted UM's motion for partial summary judgment on Counts II and III, thereby dismissing Tomsu's emotional distress claims.

¶9 On September 9, 2019, the matter proceeded to a bench trial on the only remaining count—constructive discharge. On the first day of trial, Tomsu moved to exclude Ressel from the courtroom. Prior to trial, Ressel had been designated as UM's corporate representative pursuant to M. R. Evid. 615. The District Court denied Tomsu's motion to exclude Ressel. After a four-day bench trial, at which nine witnesses testified, the District Court issued its Findings of Fact, Conclusions of Law, and Order on December 10, 2019, holding Tomsu was not constructively discharged and dismissing Tomsu's complaint as fully adjudicated on the merits.

¶10 Tomsu appeals, raising two issues which we restate as follows: (1) whether the District Court erred by granting UM's motion for partial summary judgment on Counts II and III, and (2) whether the District Court erred by denying Tomsu's motion to exclude Ressel from the courtroom.

¶11 We review summary judgment orders de novo, performing the same M. R. Civ. P. 56 analysis as the district court. *Kelly v. Teton Prairie LLC*, 2016 MT 179, ¶ 9, 384 Mont. 174, 376 P.3d 143. Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Needham v. Kluver*, 2019 MT 182, ¶ 14, 396 Mont. 500, 446 P.3d 504 (citations omitted).

¶12 UM sought summary judgment on Tomsu's emotional distress claims for two independent reasons: (1) the claims are preempted by the WDEA, and (2) Tomsu did not

suffer emotional distress as a matter of law. The District Court, in its oral ruling, addressed both issues and found in favor of UM. Because we find the WDEA preemption issue dispositive, it is unnecessary to address the District Court's alternative ruling that Tomsu did not suffer emotional distress as a matter of law.

¶13 Montana's WDEA "provides the exclusive remedy for wrongful discharge from employment . . . and preempts common-law remedies." *Blehm v. St. John's Lutheran Hosp., Inc.*, 2010 MT 258, ¶ 19, 358 Mont. 300, 246 P.3d 1024; § 39-2-902, MCA. The WDEA precludes recovery of damages for "emotional distress." Section 39-2-905(3), MCA. We have previously "held that the WDEA does not bar all tort or contract claims arising in the employment context." *Kulm v. Mont. State Univ.-Bozeman*, 285 Mont. 328, 331, 948 P.2d 243, 245 (1997) (citing *Beasley v. Semitool, Inc.*, 258 Mont. 258, 261, 853 P.2d 84, 86 (1993)). "The usual and ordinary meaning of 'claim for discharge' does not encompass any and all claims an employee may have against the employer, but only those claims for damages caused by an asserted wrongful discharge." *Beasley*, 258 Mont. at 261, 853 P.2d at 86.

¶14 Here, Tomsu brought a complaint which asserted he was constructively discharged due to the working environment under Ressel. Pursuant to the WDEA, a "constructive discharge" means "the voluntary termination of employment by an employee because of a situation created by an act or omission of the employer which an objective, reasonable person would find so intolerable that voluntary termination is the only reasonable alternative." Section 39-2-903(1), MCA. A discharge from employment includes a constructive discharge. Section 39-2-903(2), MCA.

6

¶15 While not all tort claims arising in the employment context are preempted by the WDEA, those claims that "are inextricably intertwined with and based upon" a claim for wrongful discharge are preempted. *Kulm*, 285 Mont. at 333, 948 P.2d at 246; *see also Beasley*, 258 Mont. at 263, 853 P.2d at 87 (citing *Dagel v. City of Great Falls*, 250 Mont. 224, 819 P.2d 186 (1991)). The facts supporting Tomsu's emotional distress claims are entirely intertwined with and based upon the very same facts Tomsu claimed led him to resign and amounted to a constructive discharge. As such, those claims are preempted by the WDEA.

¶16 Because the District Court correctly found Tomsu's emotional distress claims were "inextricably intertwined with and based upon" his constructive discharge claim, and therefore preempted by the WDEA, we need not address the District Court's alternative finding that Tomsu did not suffer emotional distress as a matter of law.

¶17 We review a district court's application of M. R. Evid. 615 as we would a conclusion of law, for correctness. *State v. Osborne*, 1999 MT 149, ¶ 28, 295 Mont. 54, 982 P.2d 1045. M. R. Evid. 615 states, in relevant part:

> At the request of a party, the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of . . . (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney[.]

Rule 615 is not permissive, and mandates the exclusion of witnesses unless an exception is met. *Osborne*, ¶ 28.

¶18 In the present case, UM designated Ressel as its Rule 615 corporate representative. On the first day of trial, Tomsu moved to exclude Ressel from the courtroom. Tomsu

7

argues that Lucy France, the university's general counsel, was an undeclared Rule 615 representative for UM, and therefore the District Court erred by not excluding Ressel from the courtroom and therefore allowing UM two Rule 615 representatives. Tomsu asserts this error was not harmless, as it allowed Ressel to be present in the courtroom to listen to the other witnesses and then tailor her testimony to theirs.

¶19 The plain language of Rule 615 is fatal to Tomsu's claim Ressel should have been excluded from the courtroom. UM designated Ressel as its corporate representative, not France. Ressel was therefore entitled to remain in the courtroom pursuant to Rule 615(2). Tomsu argues France could have served that role for UM, and indeed, she may have if she was designated as the corporate representative. Quite simply, however, she was not and Ressel was. UM is allowed to designate its own corporate representative and it chose Ressel—Tomsu cannot choose UM's corporate representative. Moreover, France was not a witness in the case and would not have been excluded from the courtroom under a witness exclusion order regardless. Because the District Court's decision to allow Ressel to remain in the courtroom pursuant to Rule 615(2) was correct, there is no need to address Tomsu's harmless error argument.

¶20 In sum, the District Court correctly granted UM's motion for partial summary judgment regarding Tomsu's emotional distress claims and correctly denied Tomsu's motion to exclude Ressel from the courtroom.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

8

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶22     Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE