DA 23-0298

FILED

03/05/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0298

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 43N

MIKE WINSOR,

       Plaintiff and Appellee,

    v.

STATE OF MONTANA, by and through the
MONTANA STATE AUDITOR AND
COMMISSIONER OF SECURITIES & INSURANCE,

       Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. XCDV-2021-113
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Amy D. Christensen, Vicki Bignell, Christensen & Prezeau, PLLP,
Helena, Montana

              Mark Mattioli, Legal Counsel, Commissioner of Securities and
Insurance, Helena, Montana

       For Appellee:

              Philip A. Hohenlohe, Law Office of Philip Hohenlohe, PLLC, Helena,
Montana

                    Submitted on Briefs:  February 7, 2024

                               Decided:  March 5, 2024

Filed:

                          _____
                                 Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant State of Montana, by and through the Montana State Auditor and Commissioner of Securities & Insurance (State), appeals the Order on Defendant's Motion for Summary Judgment issued January 18, 2023, and the denial of its M. R. Civ P. 50 motion for judgment as a matter of law on Plaintiff and Appellee Mike Winsor's emotional distress claim. We affirm.

¶3 Mike Winsor (Winsor) served as a staff attorney in the Office of the Commissioner of Securities and Insurance (CSI) from 2006 to 2020. In July 2019, Winsor was placed on a Work Agreement due to asserted performance and conduct issues, which were disputed by Winsor. The Work Agreement required Winsor to accurately report his time and tasks. On January 6, 2020, Winsor was suspended with pay and advised CSI was conducting an investigation into alleged discrepancies between his time tracking reports and his activities in the office. On January 27, 2020, Winsor was provided a due process letter alleging discrepancies, sufficient to justify termination, between his time tracking reports and office surveillance videos for a thirteen work-day period in November and December 2019. Following Winsor providing written response to the January 27, 2020 letter, CSI

terminated Winsor's employment on February 12, 2020. Pursuant to the termination notice of February 12, 2020, Winsor's supervisor, Michelle Dietrich (Dietrich), had reviewed video from the weeks of November 26-28, December 2-6, and December 9-13, 2020—reviewing a total of thirteen days of video. Dietrich asserted, "[t]he video showed significant discrepancies between what you reported on your time tracking sheets and your actual whereabouts[,]" concluding the "evidence reviewed demonstrates a falsification of time records, theft, and dishonesty" for which Winsor had "not provided any reasonable explanation for the approximately forty hours of time in which [Winsor was] not working over the thirteen-day time period reviewed or the discrepancies in [Winsor's] time tracking records." As such, Dietrich terminated his employment, effective immediately.

¶4 On February 5, 2021, Winsor brought suit against CSI alleging claims of discrimination, violation of the Government Code for Fair Practices, and wrongful discharge from employment. He later amended his complaint to add defamation and infliction of emotional distress claims. On September 23, 2022, CSI filed Defendant's Motion for Summary Judgment on all five claims. CSI asserted entitlement to judgment on Winsor's Wrongful Discharge from Employment Act (WDEA) claim asserting there was good or just cause to terminate him asserting, "Winsor's time tracking reports were compared to the video depicting his whereabouts, and CSI found numerous instances when Winsor was either out of the building or engaged in conduct that was inconsistent with his report that he was performing specific work tasks at those times" and his inaccurate time tracking reports constituted falsification of records and good cause for his termination. CSI

3

also asserted Winsor's emotional distress claim was barred by the exclusive remedy provision of the WDEA, asserting it was completely and inextricably intertwined with his termination. After full briefing and hearing, the District Court issued its written order of January 13, 2023, in which it concluded there were issues of material fact precluding summary judgment on Winsor's claims under the WDEA that there was no good or just cause to terminate his employment and that in terminating his employment CSI had violated an express provision of its own personnel policy[1] and also determining issues of material fact precluded summary judgment on Winsor's claim for infliction of emotional distress.[2]

¶5    The matter proceeded to a jury trial on the remaining claims—WDEA claims that CSI did not have good or just cause to terminate Winsor and Winsor's claim that CSI inflicted emotional distress on him occurring before his termination. During jury selection, CSI explained to the jury, "[i]f you are selected as a juror, there's essentially two things that you're going to have to decide. One is if CSI discharged Mike Winsor with good cause

---

[1] In doing so, the District Court noted that CSI's defense was premised on comparison of Winsor's time tracking records and review of office video surveillance footage and that CSI had negligently lost the majority of that video footage and what it purportedly showed was disputed.

[2] The District Court granted CSI summary judgment on Winsor's discrimination and violation of the Governmental Code of Fair Practices claims reasoning that by Winsor's request for sanctions against CSI for losing the majority of the video and hindering his ability to litigate his WDEA claim, he accepts his termination was solely based on the termination letter of February 12, 2020, and not on other grounds. Winsor has not appealed the District Court's summary judgment rulings on these claims. Prior to trial, Winsor withdrew his defamation claim.

or just cause, and the other is whether he -- whether CSI inflicted emotional distress before he was terminated."

¶6 At the close of evidence, CSI orally made a Rule 50 motion for judgment as a matter of law on the emotional distress claim, asserting "[w]e do not believe that evidence has been offered that supports serious and severe emotional distress as a reasonably foreseeable consequence of the defendant's negligent or intentional act." The District Court denied the motion, reasoning, "[t]he jury is capable of determining whether emotional distress claimed by Mr. Winsor is serious or severe. They are, the jurors, the best situated individuals to determine whether and to what extent the defendant's conduct, if any caused emotional distress."

¶7 At the close of trial, the District Court instructed the jury that with regard to Winsor's claims under Montana's WDEA "there is no right under any legal theory for damages for pain and suffering, emotional distress, or punitive damages . . . and no claim is being made" for such related to these claims. The court also instructed the jury as to Winsor's emotional distress claim:

> [Winsor] alleges that during the period of time prior to his termination, defendant subjected him to emotional distress. A party suffering harm as a result of the negligent or intentional infliction of serious or severe emotional distress by another party is entitled to recover damages from that party for such harm. Plaintiff is not entitled to emotional distress damages arising out of his discharge from employment.

In closing, Winsor's counsel reiterated that Winsor was not entitled to and not claiming emotional distress damages resulting from his termination and that Winsor's emotional

distress claim was totally separate and independent from his wrongful discharge claim. CSI likewise argued in closing, "[w]hen you go in there to think about the emotional distress claim, you can only think about what happened before the termination, not award damages because of the termination as it relates to emotional distress."

¶8    The District Court provided the jury a verdict sheet in which it responded to questions.[3]  With regard to Winsor's WDEA claims, pursuant to the Verdict Sheet and the court's subsequent polling of the jury, the jury concluded, on a 10-2 vote, that Winsor failed to prove CSI terminated his employment without good cause and on an 8-4 vote, that Winsor failed to prove CSI violated its personnel policy by terminating his employment without just cause.  As to Winsor's emotional distress claim, on a unanimous 12-0 vote, the jury determined Winsor proved CSI "negligently or intentionally inflicted serious or severe emotional distress on [Winsor] not arising out of [Winsor's] termination from employment" and awarded him $232,000 in damages for this claim.

¶9    CSI appeals, raising two issues, which we restate as follows: (1) whether the District Court erred by denying its motion for summary judgment on Winsor's emotional distress claim, and (2) whether the District Court erred by denying CSI's Rule 50 motions for judgment on the emotional distress claim.

---

[3] The Verdict Sheet, stipulated to by both parties, set forth verbatim the questions contained in CSI's Amended Proposed Verdict Form.

¶10    We review summary judgment orders de novo, performing the same M. R. Civ. P. 56 analysis as the district court. *Howlett v. Chiropractic Ctr., P.C.*, 2020 MT 74, ¶ 14, 399 Mont. 401, 460 P.3d 942. "The purpose of summary judgment is to dispose of those actions which do not raise genuine issues of material fact and to eliminate the expense and burden of unnecessary trials." *Hajenga v. Schwein*, 2007 MT 80, ¶ 11, 336 Mont. 507, 155 P.3d 1241 (citations omitted). Summary judgment, however, is an extreme remedy that "should 'never be substituted for a trial if a material factual controversy exists[.]'" *Hajenga*, ¶ 11 (quoting *Lee v. USAA Cas. Ins. Co.*, 2001 MT 59, ¶ 71, 304 Mont. 356, 22 P.3d 631). Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Needham v. Kluver*, 2019 MT 182, ¶ 14, 396 Mont. 500, 446 P.3d 504 (citations omitted). A dispute of fact is genuine if "based on the record, reasonable jurors could reach different conclusions as to a particular material fact." *Meadow Lake Estates Homeowners Ass'n v. Shoemaker*, 2008 MT 41, ¶ 25, 341 Mont. 345, 178 P.3d 81. "To determine the existence or nonexistence of a genuine issue of material fact, we look to the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits." *Hajenga*, ¶ 12. "[A]ll reasonable inferences that might be drawn from the offered evidence will be drawn in favor of the party opposing the summary judgment motion." *Hajenga*, ¶ 12.

¶11 CSI sought summary judgment on Winsor's emotional distress claim, asserting the claim is preempted by the WDEA.[4] CSI argued that Winsor's discovery responses acknowledged his emotional distress was inextricably intertwined with and premised upon his termination as "[w]hen asked to explain the 'extreme and outrageous conduct' at issue, Winsor admitted that the conduct alleged 'culminated in Defendants subjecting plaintiff to an open-ended discipline plan and then terminating his employment.'" In response, Winsor filed a lengthy Statement of Disputed Facts, disputing many of the facts asserted by CSI to be undisputed.[5] In sum, Winsor asserted he "was subjected to a campaign of abuse and harassment for months before he was terminated which caused extreme emotional distress which was completely separate and independent from his eventual termination, and which would have existed even if he had not ultimately been terminated."

---

[4] CSI also asserted the emotional distress claim was preempted by the Montana Human Rights Act (MHRA). As the District Court granted CSI summary judgment on Winsor's discrimination claim and he has not appealed that determination, we need not address preemption related to the MHRA.

[5] In reviewing the parties' filings of disputed and undisputed facts, it is apparent that although the parties agree various allegations were made, letters issued, and events occurred, there is considerable dispute as to the meaning, intent, perception, and significance of such which were properly left to determination by a jury. For example, both parties agree that Winsor and attorney Derek Oestreicher had an exchange in a hallway following which Winsor was suspended for a week without pay because of the incident and faulted for locking his door at work. There was, however, considerable dispute as to who initiated the contact, who was the aggressor, whether Winsor was intimidated and distressed as a result of the incident, and whether his suspension was another means of CSI harassing, intimidating, and distressing him. In addition to Winsor and Oestreicher's perceptions of their exchange, there was a witness who observed this exchange and surveillance video of the incident. Winsor also reported the incident to Human Resources and received advice as to locking his door at work. It was appropriate for the jury to consider all the evidence and determine whether it supported Winsor's emotional distress claim or not.

¶12     On appeal, CSI asserts Winsor's Amended Complaint demonstrated his emotional distress claim depended on the same set of facts as his wrongful discharge claim and again asserts his discovery responses establish the interrelation of his emotional distress and wrongful discharge claims.  Winsor responds that CSI's assertion that the final paragraph in his discovery response was somehow an acknowledgement of his emotional distress claim being inextricably intertwined with his termination from employment ignores the detailed response in the preceding two paragraphs outlining myriad ways in which CSI subjected him to a campaign of abuse and harassment for months before he was terminated.[6]

¶13     Montana's WDEA "provides the exclusive remedy for wrongful discharge from employment . . . and preempts common-law remedies."  *Blehm v. St. John's Lutheran Hosp., Inc.*, 2010 MT 258, ¶ 19, 358 Mont. 300, 246 P.3d 1024; § 39-2-902, MCA.  The WDEA precludes recovery of damages for "emotional distress[.]"  Section 39-2-905(4), MCA.  We have previously "held that the WDEA does not bar all tort or contract claims arising in the employment context."  *Kulm v. Montana State University-Bozeman*, 285 Mont. 328, 331, 948 P.2d 243, 245 (1997) (citing *Beasley v. Semitool, Inc.*, 258 Mont. 258,

---

[6] On appeal, Winsor recognizes that despite a denial of a motion for summary judgment being appealable after final judgment is entered, *Brown v. Midland Nat'l Bank*, 150 Mont. 422, 428-29, 435 P.2d 878, 881-82 (1967); citing federal law, he also asserts that once a disputed factual issue is presented to a jury for a full trial, it is no longer appealable and can be reviewed only upon a properly filed Rule 50 motion.  Based on the record before us and our determination that the District Court did not err in denying CSI's motion for summary judgment on Winsor's emotional distress claim, we find it unnecessary to address this assertion.

261, 853 P.2d 84, 86 (1993)). "The usual and ordinary meaning of 'claim for discharge' does not encompass any and all claims an employee may have against the employer, but only those claims for damages caused by an asserted wrongful discharge." *Beasley*, 258 Mont. at 261, 853 P.2d at 86.

¶14 While not all tort claims arising in the employment context are preempted by the WDEA, those claims that "are inextricably intertwined with and based upon" a claim for wrongful discharge are preempted. *Kulm*, 285 Mont. at 333, 948 P.2d at 246; *see also Beasley*, 258 Mont. at 263, 853 P.2d at 87 (citing *Dagel v. City of Great Falls*, 250 Mont. 224, 819 P.2d 186 (1991)). Merely because the complaint sets forth a set of facts and asserts claims in addition to a wrongful discharge claim, is not in itself determinative of whether any of the claims in addition to the wrongful discharge claim is inextricably intertwined to the wrongful discharge claim. As we discussed in *Beasley*, the WDEA "bars claims for discharge arising from tort or implied or express contract, but does not bar all tort or contract claims merely because they arise in the employment context." *Beasley*, 258 Mont. at 262, 853 P.2d at 86. In *Beasley*, Semitool similarly contended that because Beasley relied on the same set of facts for each of his causes of action—breach of contract, breach of the covenant of good faith and fair dealing, and wrongful discharge—his contract and tort claims were barred by the WDEA. In concluding Beasley's reliance on the same set of facts for his three causes of action did not require dismissal of the tort and contract claims, we noted M. R. Civ. P. 8(a) and 18(a) specifically allow joinder of alternative claims in a complaint and that the WDEA does not limit a claimant's right to plead

10

independent causes of action in conjunction with a WDEA claim. *Beasley*, 258 Mont. at 262, 853 P.2d at 86. Similar to *Beasley*, Winsor asserted an emotional distress claim arising from harassment and abuse by CSI occurring for months before he was terminated which would exist even had he not been terminated.

¶15 In his Statement of Disputed Facts, Winsor asserted a myriad of distressing events that had nothing to do with his time tracking and occurred before he was notified of the time tracking discrepancy for which he was fired. CSI contrarily asserted, despite providing a termination letter which expressly stated Winsor was terminated solely as his time tracking records in November and December 2019 were inaccurate, the events forming the basis of Winsor's emotional distress claims were inextricably tied to his termination. From our review of the record, the District Court appropriately determined the emotional distress claim should go to the jury—in essence, determining the issue of whether the emotional distress claim was inextricably intertwined with and based on the termination was itself a disputed factual issue which a jury should resolve.

¶16 Trail of this matter lasted six days—with 19 different witnesses testifying and over 50 exhibits being entered into evidence. Following close of evidence and prior to submitting the case to the jury, CSI orally made a Rule 50 motion for judgment as a matter of law on the emotional distress claim, asserting the evidence presented was insufficient to support serious and severe emotional distress as a reasonably foreseeable consequence of CSI's negligent or intentional act. The District Court denied the motion, concluding the jury was in the best position to consider the evidence presented and determine whether and

11

to what extent the defendant's conduct, if any, caused emotional distress. After the jury rendered its verdict, CSI orally renewed its Rule 50 motion, again asserting, despite the jury's unanimous determination in Winsor's favor on the emotional distress claim, that there was insufficient evidence to support this claim.

¶17 Now on appeal, CSI argues Winsor's emotional distress evidence was legally insufficient to establish emotional distress so severe no reasonable person could be expected to endure it because it significantly overlapped with evidence that was precluded from consideration by the WDEA—in essence, it was inextricably intertwined with his discharge and was thus barred by the WDEA. Winsor counters that when CSI made its Rule 50 motions, it did not raise the argument that the emotional distress claim was intertwined with the wrongful discharge claim and thus precluded, but rather only asserted the emotional distress was not sufficiently serious or severe. We agree with Winsor. CSI may not now raise for the first time on appeal argument not presented in its oral Rule 50 motions made to the District Court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 20, 373 Mont. 1, 313 P.3d 839 (collecting cases); *see also In re M.A.L.*, 2006 MT 299, ¶ 57, 334 Mont. 436, 148 P.3d 606 (noting a party cannot raise arguments in a post-trial Rule 50(b) motion which were not previously raised in its pre-verdict Rule 50(a) motion).

¶18 From our review of the record, we are not persuaded by the argument CSI did make to the District Court—the emotional distress was not sufficiently serious or severe. It is

clear there was sufficient evidence presented in support of Winsor's emotional distress claim and the District Court did not err in denying CSI's repeated Rule 50 motions.

¶19 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶20 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR